**J.P., Petitioner,**

v.

**DISTRICT COURT In and For the 2ND JUDICIAL DISTRICT OF DENVER, and the Honorable Connie L. Peterson, One of the Judges Thereof, Respondents.**

No. 94SA54.

Supreme Court of Colorado,
En Banc.

May 2, 1994.

Rehearing Denied June 6, 1994.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Rachel A. Bellis, Leventhal & Bogue, P.C., James Leventhal, Denver, for petitioner.

Pryor, Carney & Johnson, P.C., Elizabeth C. Moran, Bruce A. Montoya, Englewood, White & Steele, P.C., R. Eric Peterson, George Codding, III, Denver, Taylor, McQuiston & McCune, John E. Taylor, Aurora, for respondents.

Justice ERICKSON delivered the Opinion of the Court.

The petitioner brought this original proceeding pursuant to C.A.R. 21 seeking relief in the nature of mandamus and prohibition.[1] J.P. contends that the respondent district court abused its discretion when it refused to allow her to depose and endorse witnesses necessary to prove the petitioner's case based in part on the fact that the trial had been twice continued. We issued a rule to show cause and now make the rule absolute.

**I**

In 1985, the petitioner, J.P., then a seventy-two-year-old woman, went to Saint Joseph's Hospital (St. Joseph's) for hip replacement surgery. The surgery was performed by Dr. Gerhard Anderson (Dr. Anderson), an orthopedic surgeon. During the surgery, Dr. Anderson replaced J.P.'s hip with an allogenous bone graft. The allograft tissue was ordered by St. Joseph's from Mile High Transplant Bank (MHTB). MHTB obtained the tissue from LifeNet Transplantation Services, Inc. (LifeNet). LifeNet procured, harvested, and distributed the tissue from the donor, a homicide victim infected with human immunodeficiency virus (HIV).

After the surgery, J.P. tested HIV-positive. In June 1992, J.P. filed a professional and medical negligence action claiming that Dr. Anderson, St. Joseph's, MHTB, and LifeNet were negligent and caused her to become infected with HIV.

On October 7, 1992, the parties were urged to meet informally to identify witnesses, establish a discovery plan, and reach agreement regarding which facts were in dispute. A formal pretrial conference took place on October 13 and resulted in agreements concerning the order of discovery and the scheduling of depositions. The case was set for a two-week trial which was to commence on May 10, 1993.

After a status conference held on December 14, 1992, the parties were ordered to file disclosure certificates by February 9, 1993, to complete discovery by April 9, and to identify all witnesses and experts relied on with respect to summary judgment motions by January 4, 1993.

On January 4, 1993, J.P. identified the experts she intended to rely on for her summary judgment motion. The experts included Captain Alvin Booth (Captain Booth), Detective Donald Adams (Detective Adams),

---

1. Original jurisdiction under C.A.R. 21 is appropriate when there is a request for review of whether a trial court exceeded its jurisdiction or seriously abused its discretion, coupled with no adequate remedy on appeal. *People v. Young*, 814 P.2d 834, 838 (Colo.1991). Issuance of pretrial orders that significantly disadvantage claimants in litigating the merits of a controversy are grounds for granting jurisdiction in an original proceeding. *Sanchez v. District Court*, 624 P.2d 1314, 1316 (Colo.1981); *Varner v. District Court*, 618 P.2d 1388, 1390 (Colo.1980). Additionally, we recognize that J.P.'s opportunity to receive an adequate remedy on appeal is diminished because she may not live long enough to benefit from post-trial appellate review; J.P. is eighty-years old and is HIV-positive.

Dr. Roland Domen (Dr. Domen), Dr. Larry Weis (Dr. Weis), Dr. David Rowlands (Dr. Rowlands), and Dr. Lowell Young (Dr. Young). Subsequently, J.P. filed her disclosure certificate endorsing Drs. Young, Weis, Rowlands, and Domen as expert witnesses. After all parties filed disclosure certificates, they began to conduct extensive discovery.

To accommodate its docket, the district court continued the trial to August 16, 1993, on its motion. After the continuance, on four occasions the district court denied J.P.'s motions for supplemental disclosure to endorse witnesses and prohibited J.P. from conducting further discovery.

The first denial of J.P.'s discovery request was during a telephone conference on March 29, 1993. J.P. informed the district court that several problems had developed with three endorsed standard-of-care witnesses and requested that Dr. Lorraine Day (Dr. Day) be substituted for the three witnesses to testify concerning the standard of care. The request was formalized on April 16, 1993, 122 days prior to trial. The court denied the request.

Second, the disclosure certificate J.P. filed in February, 1993, listed Dr. Patricia Pacey (Dr. Pacey) as a witness who would provide information on J.P.'s "economic losses" including the "cost of medical care, and other medical and economic expenses." J.P.'s disclosure certificate also listed an unnamed expert "economist." Subsequently, J.P. realized that Dr. Pacey's name had been omitted in the expert designation and on July 8, 1993, moved to specifically endorse her as an expert. The district court denied J.P.'s motion to clarify Dr. Pacey's endorsement.

Third, in J.P.'s motion to endorse Dr. Pacey, J.P. also sought leave to endorse Captain Booth and Detective Adams to rebut evidence the defendants intended to present relating to the donor's murder. Captain Booth and Detective Adams prepared affidavits concerning their investigation which were presented to the defendants as early as December 1992. J.P. claimed the officers' testimony was relevant to the determination of whether the donor was an appropriate tissue or blood donor.[2] On July 27, 1993, the district court denied the endorsement of Captain Booth and Detective Adams as untimely and incomplete for failing to summarize the anticipated testimony. J.P. moved for reconsideration, and this motion was also denied.

Finally, just prior to the trial in August, J.P. obtained new evidence concerning LifeNet's donor screening practices from two industry insiders, Jamie Grooms (Grooms) and Herb Teachy (Teachy). As a result of the new information, on August 19, 1993, the district court allowed discovery depositions of these new witnesses and on J.P.'s motion, continued the trial for a second time until June 20, 1994.[3] Simultaneously, however, the district court froze "all discovery, all endorsement of witnesses and/or exhibits and the filing of all motions." The district court subsequently rejected J.P.'s attempts to endorse additional witnesses J.P. discovered as a result of information Grooms and Teachy provided.

We issued a rule to show cause why relief should not be granted. We hold that in all four instances in which the district court prevented J.P. from either endorsing witnesses or conducting discovery, the court abused its discretion. Accordingly, we make the rule absolute.

## II

■ The purposes of discovery and pretrial procedural rules include the production of all relevant evidence, the elimination of surprises at trial, the simplification of issues, and the encouragement of fair and just settlements. *Bond v. District Court*, 682 P.2d 33 (Colo.1984); *Hawkins v. District Court*, 638 P.2d 1372 (Colo.1982). The purpose of the disclosure mandated by C.R.C.P. 16 is to

---

**2.** Specifically, Captain Booth and Detective Adams claimed that the donor frequented several topless bars and dated several dancers that may have participated in prostitution. There was also some evidence that the donor may have served as a drug courier.

**3.** The district court ordered the continuance on August 19, 1993, and made it effective as of August 6, 1993.

provide parties with adequate time to prepare by obtaining relevant evidence to prevent trial by ambush and surprise.[4] *Freedman v. Kaiser Found. Health Plan of Colorado,* 849 P.2d 811, 815 (Colo.App.1992); *Daniels v. Rapco Foam, Inc.,* 762 P.2d 717, 719 (Colo.App.1988); *Conrad v. Imatani,* 724 P.2d 89, 92–93 (Colo.App.1986); *see also Duffy v. Gross,* 121 Colo. 198, 209–10, 214 P.2d 498, 504–05 (1950). C.R.C.P. 16 provides:

> The purpose of this Rule 16 is to define and clarify the responsibilities of and options available to the parties and the court to facilitate a fair and speedy resolution of civil disputes with a minimum of inconvenience and expense.... The requirements of this rule may be modified only for good cause shown.

Rule 16 requires the designation of expert witnesses at a reasonable time before trial to prevent undue surprise and to give each party the opportunity to prepare adequately for trial. *Freedman,* 849 P.2d at 815; *Four Strong Winds, Inc. v. Lyngholm,* 826 P.2d 414 (Colo.App.1992). In order to allow parties to prepare for trial, Rule 16 provides:

> (a) Disclosure. In every action each party shall file with the court and serve on all other parties the following enumerated information as a Disclosure Certificate. A party's Disclosure Certificate shall be prepared and signed in conformance with Rule 11. The Disclosure Certificate shall be served and filed within one hundred eighty days after the case is at issue but no later than ninety days before trial, whichever occurs first. A case shall be deemed "at issue" the tenth day after the last pleading permitted under C.R.C.P. 7 has been filed and served. The Certificate may be supplemented only as provided in Subsections (b) and (g) of this Rule. The Certificate shall state the name of the party or parties on whose behalf it is presented and shall briefly set forth the following matters under the following captions and in the following order:
>
> I. STATEMENT OF CLAIMS AND DEFENSES. A concise and brief statement of all claims or defenses asserted by that party and identification by any party of all claims or defenses which, under the requirements of C.R.C.P. 11, are or should be dropped.
>
> ....
>
> V. ITEMIZATION OF DAMAGES. An itemization of damages together with a description of the basis for calculating the damages claimed.
>
> ....
>
> VII. WITNESSES. The name, address and telephone number of any witness or party whom the party may call at trial, together with a summary of such person's anticipated testimony or an attached copy of any statement of such person.
>
> ....
>
> IX. EXPERTS. The name, address, and a brief summary of the qualifications of any expert witness the party may call at trial, together with a statement as to each such expert witness which sets forth the substance of the opinions to which the expert is expected to testify. If the identity of a party's expert witness is not known, the party shall disclose the anticipated area of expertise and provide a statement of probable subject matter of any expert testimony the party may use at trial.
>
> X. DISCOVERY PLAN. A concise discovery plan setting forth any remaining discovery contemplated by that party and proposed limitations on discovery. The plan shall specify the type of discovery, the time frame and from whom the discovery will be sought. A blanket incorporation of the discovery rules shall not be permitted.

Rule 16 requires parties to organize their cases in a timely manner to prevent undue surprise of the opposing party and to allow time for adequate preparation. Rule 16 sets specific time limits on discovery and the endorsements of witnesses:

> (f) Limitations on Discovery. All discovery shall be completed no later than thirty days prior to the trial date. No party shall initiate discovery which cannot, in accor-

---

**4.** Adequate time means sufficient time to allow a party to obtain an expert rebuttal witness, *Freedman v. Kaiser Found. Health Plan of Colorado,* 849 P.2d 811, 815 (Colo.App.1992), and to prepare cross-examination. *Daniels v. Rapco Foam, Inc.,* 762 P.2d 717, 719 (Colo.App.1988).

dance with time requirements in the Rules, be completed thirty days before the trial date. Each party may conduct such discovery as is detailed in the Discovery Plan section of that party's Disclosure Certificate or as ordered by the court in the Case Management Order. Leave to vary from a party's Discovery Plan may be granted by the court or by agreement of the parties. (g) Expert Witness Reports or Summaries. A report or summary of opinions of each expert witness shall be served on all parties no later than eighty days before the trial date. The report or summary shall set forth the opinions of the expert and the basis for each opinion. This requirement shall not apply to expert witnesses who have been deposed or whose opinions have otherwise been made known through discovery as provided in C.R.C.P. 26(b)(4). No later than fifteen days after receipt of an opposing party's supplemental designation of an expert under Subsection (b)(4) of this Rule 16, an opposing party may designate an opposing or rebuttal expert to meet an expert opinion first learned of in the opposing party's Rule 16(b)(4) supplementation. A report or summary of such opposing or rebuttal expert shall be served with the designation.

Rule 16 also allows for the supplementation of material provided in the disclosure certificate. Supplementation, however, is not boundless:

(b) Supplementing The Disclosure Certificate. A party may supplement a Disclosure Certificate no later than eighty days prior to trial as follows:

. . . .

(2) Non-expert witnesses whose identity or the significance of which was not known at the time of the filing of the Disclosure Certificate. The supplementation shall state why the witness could not have been disclosed earlier.

. . . .

(4) Expert witnesses not known at the time of the filing of the Disclosure Certificate, if identified in the Disclosure Certificate by area of expertise and statement of subject matter of their testimony, and any opposing or rebuttal expert responding to an opposing party's designation. The supplementation shall set forth the subject matter of the expert's testimony and state why the expert could not have been disclosed earlier.

. . . .

(c) Binding Effect. The information provided in a party's Disclosure Certificate, as supplemented, shall be binding on that party. Except for the additional supplementation of experts set forth in Subsection (g) of this Rule 16, and except where necessary to prevent manifest injustice, no subsequent endorsement shall be permitted later than eighty days before the trial date.

Despite the procedural nature of the rules of discovery, the rules are not inflexible and should be construed liberally. C.R.C.P. 1(a). Liberal construction assures that all parties are afforded their day in court and guarantees that all relevant evidence is available for presentation at trial. *See Denver Air Ctr. v. District Court*, 839 P.2d 1182, 1185 (Colo.1992) (recognizing that the rules of civil procedure should be liberally construed); *see also Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947) (stating that the federal rules of discovery, which allow broad discovery, attempt to make trial "a fair contest with the basic issues and facts disclosed to the fullest practicable extent"). Rule 16 should also be interpreted liberally. *See Consolidated Hardwoods, Inc. v. Alexander Concrete Constr. Inc.*, 811 P.2d 440, 442 (Colo.App. 1991) (holding that the rule pertaining to the supplementation of disclosure certificates should be construed liberally); *AAA Crane Serv., Inc. v. Omnibank University Hills, N.A.*, 723 P.2d 156, 158 (Colo.App.1986) (stating that Rule 16 should not be used to deny a party its day in court). As such, it is unreasonable to deny a party an opportunity to present relevant evidence based on a draconian application of pretrial rules. *Nagy v. District Court*, 762 P.2d 158 (Colo.1988); *see also*, William W. Schwartzer, *Slaying the Monsters of Cost and Delay: Would Disclosure Be More Effective than Discovery?*, 74 Judicature 178 (1991) (noting that the broad

and liberal federal discovery rules are intended to avoid "trial by ambush").

■ Although Rule 16 should be applied liberally, opposing parties should not be prejudiced by the supplementation of witnesses or endorsements. Prejudice may occur if a party is unduly surprised or if the party does not have adequate time to prepare. *Four Strong Winds*, 826 P.2d at 414. Continuing a trial, therefore, can often cure or mitigate prejudice that may occur as a result of supplementation or late disclosure.[5] *See People v. District Court*, 793 P.2d 163, 168 (Colo. 1990) (factoring in a continuance in finding no prejudice from delay of disclosure in a criminal case); *People v. Hammons*, 771 P.2d 1, 2 (Colo.App.1988) (postponing criminal trial mitigates prejudice of late disclosure); *Danburg v. Realties, Inc.*, 677 P.2d 439, 442 (Colo.App.1984) (implying that a continuance can cure surprise of late disclosure).

■ If the trial court finds that Rule 16 has been violated by a party, it may impose sanctions. Rule 16(h) provides:

Compliance. Compliance with this Rule 16 is mandatory. In the event of non-compliance, the court shall impose appropriate sanctions.

Sanctions for failure to comply with disclosure rules are applied at the discretion of the trial court and should not be disturbed absent an abuse of discretion. *Freedman*, 849 P.2d at 815. In imposing sanctions pursuant to discovery violations, "[t]he trial judge should exercise informed discretion in imposing a sanction which is commensurate with the seriousness of the disobedient party's conduct." *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo.1987); *see also Nagy*, 762 P.2d at 161. Sanctions can include issue or witness preclusion or the limitation of testimony. *Freedman*, 849 P.2d at 815; *Locke v. Vanderark*, 843 P.2d 27, 29 (Colo.App.1992); *United Bank of Lakewood Nat'l Ass'n v. One Center Joint Venture*, 773 P.2d 637 (Colo.App.1989). However, issue or witness preclusion is a severe sanction and

should only be invoked when there has been serious misconduct by the party seeking modification of the pretrial order by the endorsement of a substitute witness. *See Freedman*, 849 P.2d at 815 (stating that the rule requires designation and description of expert testimony "at some reasonable time before trial. This is to prevent undue surprise and to give each party the opportunity to prepare adequately"). Additionally, when there is no violation of Rule 16, it is an abuse of discretion to impose any sanction. *See Four Strong Winds*, 826 P.2d at 414; *City of Westminster v. MOA, Inc.*, 867 P.2d 137, 141 (Colo.App.1993).

■ Matters of pretrial procedure, including the adequacy of pretrial disclosure, witness endorsements, and the allowance of later endorsements, are all matters that have been committed to the discretion of the trial court. *See Nagy*, 762 P.2d at 160; *Four Strong Winds*, 826 P.2d at 417; *United Bank of Lakewood Nat'l Ass'n*, 773 P.2d at 640. The trial court is given discretion because it is directly involved in the day-to-day progress of the case. The trial court is therefore in the best position to balance the need to assure that each party has access to relevant evidence against the need to prevent unnecessary prejudice and delay. *See Cherry Creek School Dist. No. 5 v. Voelker*, 859 P.2d 805, 810 (Colo.1993).

■ The trial court's discretion on discovery matters is not limitless, however. A court abuses its discretion if its decision is manifestly arbitrary, unfair, or unreasonable. *People v. Milton*, 732 P.2d 1199, 1207 (Colo. 1987); *MOA*, 867 P.2d at 141. If the trial court's actions substantially tip the balance in an effort to avoid prejudice and delay and thereby unreasonably deny a party his day in court, the reviewing court must overturn the decision of the trial court:

In dealing with questions of strict enforcement of rules of this type, we must remember that courts "exist primarily to afford a forum to settle litigable matters between

5. The decision to grant or deny a continuance, as well as the imposition of conditions attendant to a continuance to minimize prejudice, are within the broad discretion of the trial court. *Butler v.* *Farner*, 704 P.2d 853 (Colo.1985); *Miller v. First Nat'l Bank of Englewood*, 156 Colo. 358, 399 P.2d 99 (1965); *Ford v. Simmons*, 52 Colo. 249, 121 P. 167 (1912).

disputing parties," *Mizar v. Jones,* 157 Colo. 535, 403 P.2d 767 (1965), and that "unless enforcement of procedural requirements is essential to shield substantive rights, litigation should be determined on the merits and not on the basis of technical rules." *People v. Dickinson,* 197 Colo. 338, 592 P.2d 807 (1979). Here, the policy favoring strict compliance with local rules of court, "is less compelling than the policy favoring resolution of disputes on the merits." *Farber v. Green Shoe Mfg. Co.,* 42 Colo.App. 255, 596 P.2d 398 (1979). *Group 1 Services, Ltd. v. Michilleti,* 650 P.2d 1305, 1306 (Colo.App.1982); *see also Consolidated Hardwoods,* 811 P.2d at 442 (stating that it was an abuse of discretion to prohibit supplementation of a disclosure statement absent prejudice). Therefore, strict and technical enforcement of disclosure rules is not the favored policy. Under the favored policy, the focus of Rule 16 enforcement is on avoiding undue surprise and assuring that each party has the opportunity to adequately prepare for, and present evidence at, trial. *Freedman,* 849 P.2d at 815; *Conrad,* 724 P.2d at 89; *see also AAA Crane Serv., Inc.,* 723 P.2d 156, 158 (stating that strict compliance with Rule 16 is less compelling than the policy favoring the fair and just resolution of the dispute).

### III

Having outlined the general principles underlying the application of Rule 16, we now apply those principles to the district court's preclusion rulings in this case. In each instance, inasmuch as the defendants' substantive rights to notice and their opportunity to prepare for trial have been protected by two postponements of the trial, we hold that the district court abused its discretion in preventing the endorsement and discovery requests of J.P.

### A

In the underlying action, testimony from orthopedic surgeons will be relevant to both sides. The operating orthopedic surgeon, Dr. Anderson, is a defendant. At issue is whether J.P. was fully advised of the alternatives and gave her informed consent to Dr. Anderson to implant the donor's tissue in her body. The importance of expert testimony from orthopedic surgeons is demonstrated by the fact that the defendants have collectively endorsed four orthopedic surgeons, three of whom are specifically endorsed as experts in orthopedic surgery.

J.P. endorsed Dr. Young, Dr. Weis, Dr. Rowlands, and Dr. Domen as expert witnesses to testify concerning issues of negligence and the standard of care provided by Dr. Anderson, St. Joseph's, MHTB, and LifeNet. However, the only orthopedic surgeon initially endorsed by J.P. as an expert witness was Dr. Weis.

On March 29, 1993, the parties participated in a telephone conference during which J.P. informed the defendants that difficulties had developed in obtaining the testimony of Dr. Weis, Dr. Rowlands, and Dr. Domen.[6] The difficulty in obtaining the testimony of the three witnesses was specifically outlined in J.P.'s April 16, 1993 motion to supplement the disclosure statement.[7] J.P. advised the defendants that due to the difficulties with the witnesses, J.P. planned to add Dr. Day, a board-certified orthopedic surgeon, as an expert witness in orthopedic surgery and acquired immunodeficiency syndrome (AIDS). On April 16, 1993, J.P. formally moved to supplement her disclosure certificate and to endorse Dr. Day as an expert witness. As a result of the continuance, the motion was submitted a full four months (122 days) before the trial was scheduled to begin. The

---

**6.** As early as December 1992, J.P.'s counsel knew of potential problems with Dr. Rowlands. J.P. filed a motion for a protective order on January 15, 1993, claiming that LifeNet or its counsel was "pressuring" Dr. Rowlands not to testify in the case. Dr. Rowlands was an employee of LifeLink of Florida, a tissue procurement facility.

**7.** In her motions, J.P. asserted that Dr. Weis refused to testify or to be deposed unless J.P.

agreed to dismiss MHTB from the case, that Dr. Rowlands advised J.P. that he had been pressured by his employer, LifeLink of Florida, Inc., not to testify, and Dr. Domen unexpectedly disqualified himself stating that he was not an expert and was therefore not qualified to testify. Dr. Rowlands subsequently resigned from LifeLink of Florida and agreed to testify.

motion set forth Dr. Rowlands' and Dr. Weis' withdrawal, as well as Dr. Domen's deposition statement that he was not an expert qualified to testify against the defendants in this case, as the reasons for endorsing Dr. Day.

On June 11, 1993, the district court denied J.P.'s motion finding it untimely under C.R.C.P. 16(b) because it was filed less than eighty days before the original trial date. The district court also found that the defendants would be prejudiced by the need to take additional depositions, that J.P. had no right to different witnesses, and that Dr. Rowlands fulfilled J.P.'s need for expert testimony.

J.P. renewed the motion claiming that without Dr. Day's testimony she would not have an expert in the field of orthopedic surgery. The district court denied the motion stating that J.P. had two witnesses, Dr. Rowlands and Dr. Young, who were capable of testifying concerning Dr. Anderson's care and that the issues remaining as to Dr. Anderson did not specifically involve orthopedic procedures.[8]

The denial of the request was an abuse of discretion. Orthopedic issues are relevant to the underlying action, and the withdrawal of Dr. Weis, the only endorsed orthopedic surgeon, left J.P. without an expert in the field of orthopedic surgery. J.P. has the right to present expert witnesses to support her claim and to litigate the merits of her case. *United Blood Services v. Quintana*, 827 P.2d 509, 520 (Colo.1992); *see also Sanchez v. District Court*, 624 P.2d 1314, 1316 (Colo. 1981). Dr. Anderson is expected to testify to the "general knowledge within the orthopedic community" that freezing tissue eliminates the risk of HIV transmission. The testimony of an orthopedic expert, such as Dr. Anderson, could not be fairly met with the testimony of either Dr. Rowlands or Dr. Young who are not orthopedic surgeons. Therefore, unless there is prejudice to the defendants, Dr. Day should be endorsed to replace the orthopedic surgeon, Dr. Weis. *See Daniels*, 762 P.2d at 719 (stating that it was prejudicial to offer an expert late because there was another expert offering the same testimony and summary of his testimony was not produced).

▮ In this case, the defendants would not suffer prejudice if Dr. Day were endorsed.[9] First, J.P. attempted to endorse Dr. Day 122 days prior to the August trial date. Rule 16 specifically provides that expert witnesses may be added to the disclosure certificate no later than "80 days *prior to trial*." (Emphasis added.) *See Consolidated Hardwoods*, 811 P.2d at 441 (stating that supplementation is a matter of right for matters unknown at the time of filing the disclosure certificate if provided eighty days before trial). The reason for the time limit is to prevent undue surprise and to allow the opposing party adequate time to prepare for trial. *Freedman*, 849 P.2d at 815. Because the actual trial date at the time J.P. attempted to endorse Dr. Day was 122 days away, there was no surprise and the defendants were not deprived of the opportunity to prepare adequately for trial.[10] *See MOA*, 867 P.2d at 141 (holding that it was an abuse of discretion not to allow supplemental endorsement when the new expert witness supports prior witnesses' known claims).

Additionally, the defendants will suffer little or no economic prejudice. The defendants do not need to take an *additional* deposition because the deposition of Dr.

8. The district court stated that the issues remaining involving Dr. Anderson were: (1) what Dr. Anderson knew or should have known about HIV transmission at the time of the surgery; (2) whether the risk of HIV transmission was a "substantial risk" of the surgery; and (3) when J.P. knew or should have known about the alleged cause of her HIV infection.

9. The district court's refusal to endorse Dr. Day did, however, prejudice J.P. Dr. Rowlands and Dr. Young, both of whom are still available to testify, are not orthopedic surgeons. Dr Rowlands' field is pathology and tissue banking and Dr. Young specializes in internal medicine and infectious diseases. If Dr. Day does not testify, J.P. will have no expert in orthopedic surgery to rebut the three experts in the field endorsed by the defendants.

10. We do not believe, however, that a continuance gives a party free reign to reopen discovery. The requested discovery must still be necessary, requested in good faith, and the delay caused must not be prejudicial. The requested endorsement in this case meets these criteria.

Weis, the prior orthopedics expert, has not yet been taken. Furthermore, J.P. has represented that Dr. Day's testimony would be a substitute for and would not exceed the issues set forth in the endorsement of Dr. Weis.

■ By not allowing J.P. to endorse Dr. Day, the district court effectively sanctioned J.P. for her failure to endorse Dr. Day sooner, even though the attempted endorsement was more than eighty days before the scheduled trial. Although sanctions are within the discretion of the trial court, *Freedman*, 849 P.2d at 815, they must be commensurate with the seriousness of the transgression. *Kwik Way Stores*, 745 P.2d at 677. Dr. Day was merely a replacement for Dr. Weis. J.P. did not act in bad faith by attempting to endorse Dr. Day and the defendants were not prejudiced by the substitution. Therefore, the preclusion of Dr. Day as a witness was an impermissible sanction under the facts in this case.

## B

■ The disclosure certificate J.P. filed in February, 1993, listed Dr. Pacey as a witness who would provide information on J.P.'s "economic losses" including the "cost of medical care, and other medical and economic expenses." J.P. also endorsed an unnamed expert "economist." J.P. realized that Dr. Pacey's name had been omitted in the expert designation and on July 8, 1993, moved to specifically endorse her as an expert. The July 8 motion also contained a summary of Dr. Pacey's opinions. Dr. Pacey's report was supplied to the defense counsel shortly thereafter.

On July 26, 1993, the district court denied J.P.'s motion to clarify Dr. Pacey's endorsement. Although the district court accepted J.P.'s contention that the omission of Dr. Pacey's name was inadvertent, it held that the summary of her opinions was not provided in a timely manner and therefore the defendants suffered obvious prejudice.

As in the case of Dr. Day, the district court's solution was to sanction J.P. by depriving her of relevant and admissible evidence. This sanction is not commensurate with J.P.'s error in not endorsing Dr. Pacey in the proper place in the disclosure certificate and not providing a summary of her expert opinion.

Endorsing Dr. Pacey would not prejudice the defendants and any potential prejudice is cured by the continuance of the trial. The defendants had knowledge of Dr. Pacey's opinion as a witness as of February 9, 1993, and obtained her report in July 1993. The defendants' disclosure certificate reflects that they anticipate the need to rebut the opinion of an economist expert. Additionally, Dr. Pacey's report was based primarily on the studies and data compiled by Dr. Cohn, one of LifeNet's endorsed experts. Therefore, there was neither surprise nor inadequate time to prepare. *See McCrea & Co. Auctioneers, Inc. v. Dwyer Auto Body,* 799 P.2d 394 (Colo.App.1989) (stating that even though trial data certificates did not include a report of damages expert's anticipated testimony, there was no prejudice in allowing the testimony at trial inasmuch as the witness had been available for more than a year and remained available for interview before trial).

Furthermore, the August 6 continuance provided all of the defendants with the opportunity to prepare adequately on the economics issues. *Freedman,* 849 P.2d at 815; *Conrad,* 724 P.2d at 89. By the June 1994 trial date, the defendants will have had Dr. Pacey's report for eleven months and they will have known about Dr. Pacey for over fifteen months. *See Consolidated Hardwoods,* 811 P.2d at 442–42 (stating that absent actual prejudice, the court should liberally permit supplementation of disclosure statement if a request is made more than eighty days prior to trial).

The only effect of excluding Dr. Pacey's expert testimony would be to impair J.P.'s ability to fully litigate the merits of her case. Accordingly, we reverse the district court's order denying the endorsement of Dr. Pacey.

## C

In the July 8 motion to supplement and clarify disclosure, J.P. also sought to have Captain Booth and Detective Adams en-

dorsed. Captain Booth and Detective Adams investigated the donor's homicide in Virginia.[11] J.P. asserts that Captain Booth and Detective Adams possess specific knowledge about the donor's social history which is critical to the legal issue of causation and the factual question of whether the donor was an appropriate source from which to harvest bone and tissue.

On July 26, 1993, the district court denied the motion as untimely, incomplete for failing to summarize anticipated testimony, and because it contained inadmissible hearsay. The district court found that although trial had been continued, the continuance did not cure J.P.'s failure to comply with Rule 16. The court ordered all witness endorsements frozen, and ruled that the affidavits and expert testimony based on the affidavits was inadmissible at trial. Although the district court recognized that the ruling would leave J.P. without certain evidence with which to impeach defense witnesses, the court concluded that this problem was the result of J.P.'s failure to comply with Rule 16.

■ The purposes underlying the rules of pretrial disclosure—to allow all parties an opportunity for adequate preparation and to prevent undue surprise—were met regarding the endorsements of Captain Booth and Detective Adams. *Conrad,* 724 P.2d at 89. Contrary to the district court's finding, under Rule 16(b) the endorsement was complete when made because affidavits outlining their testimony were attached to the motion. The defendants were not prejudiced by the endorsements because they knew of the existence of the witnesses and the substance of their expected testimony since December 1992. *See Four Strong Winds,* 826 P.2d at 418 (stating that there was no prejudice in supplementing an appraisal when either party could be expected to request the supplementary appraisal update as part of the ultimate trial preparation).

■ The district court's prohibition of the endorsement of Captain Booth and Detective Adams as experts because they could only offer hearsay evidence is irrelevant. Admissibility is not the test in matters of discovery; information may be discoverable even if it is not admissible at trial. *Lucas v. District Court,* 140 Colo. 510, 345 P.2d 1064 (1959); *Sewell v. Public Service Co. of Colorado,* 832 P.2d 994 (Colo.App.1991). Captain Booth and Detective Adams conducted the investigation into the murder of the tissue donor. LifeNet failed to contact them during its donor screening. The type of information the officers possessed was the same evidence that tissue banks typically seek out and rely upon in making their donor decisions, i.e., Captain Booth and Detective Adams possessed anecdotal evidence on the history and habits of the deceased donor. In screening potential donors, evidence regarding history and habits of the donors is precisely the type of information tissue banks seek. Therefore, Captain Booth's and Detective Adams' testimony is relevant to rebut the defendants' claims that the screening of donors was thorough in this case.

■ While the endorsements could have been submitted earlier, the sanction of witness preclusion is not appropriate because the endorsement in July 1993, a month before the then-scheduled trial in August, was neither willful, grossly negligent, prejudicial, nor made in bad faith.[12] *Nagy,* 762 P.2d at 158; *Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064 (Colo.App.1990). Additionally, as the trial date is now set, the endorsement is no longer late and the continuance has cured any alleged prejudice. *Four Strong Winds,* 826 P.2d at 414; *Consolidated Hardwoods,* 811 P.2d at 442 (stating if the defendant does not show actual prejudice, supplementation on matters already known should be liberally allowed up to eighty days prior to trial).

11. The testimony of Captain Booth and Detective Adams could rebut evidence contained in a *New England Journal of Medicine* article the defendants may present which specifically discusses J.P.'s surgery and subsequent infection. The article, co-authored by LifeNet representatives, concludes that the donor was not a high-risk donor.

12. The totality of the circumstances requires the trial court to determine, in its discretion, whether the request was reasonable and not prejudicial to an adverse party.

Accordingly, we hold that the district court abused its discretion when it denied J.P.'s motion to endorse Captain Booth and Detective Adams because the evidence is relevant and the defendants are not prejudiced.

### D

Shortly before the August 16 trial date, J.P. received information from Grooms and Teachy concerning LifeNet's donor screening practices during the period the donor's tissue was harvested. Both Grooms and Teachy contend that LifeNet did not make potential tissue donor decisions based on neutral medical criteria, as LifeNet claims, but on financial considerations.

As a result of the newly discovered information, on August 4, 1993, J.P. moved to endorse Grooms and Teachy. The motion was granted on August 19, 1993, *nunc pro tunc* August 6, 1993, in order to allow J.P. time to conduct discovery depositions. The trial was then rescheduled for June 20, 1994. In addition to granting the continuance, however, the district court prohibited all other discovery and endorsements of witnesses and exhibits.

J.P. subsequently interviewed Grooms and Teachy. From their statements, J.P. identified four people formerly or presently affiliated with LifeNet who possessed information relevant to LifeNet's procedures for screening, evaluating, and distributing tissues: Phillip Felton (Felton), an endorsed witness for LifeNet and a LifeNet employee; Frank Glowczewskie (Glowczewskie), a consultant to LifeNet; Helen Leslie (Leslie), an upper level manager of LifeNet; and Bill Anderson (Anderson), an upper level manager of LifeNet. J.P. believed that these four individuals could corroborate the assertions that LifeNet did not adhere to its own standards of care.

On November 19, 1993, J.P. moved to depose the four witnesses identified by Grooms and Teachy. The district court denied the motion citing its previous orders prohibiting further discovery. The court found that J.P.

was aware of three of the proposed witnesses by at least December 1992 and should have endorsed them then; that LifeNet had endorsed one of the witnesses in its original disclosure certificate, and that it should have been obvious to J.P. that two of the witnesses, officers of LifeNet, might have information about the policies and practices of LifeNet. The district court also noted that the proposed testimony did not appear relevant or admissible and that the additional testimony would prejudice the defendants. Finally, the district court stated that allowing additional depositions would violate the purpose of Rule 16 which prevents " 'Everready Bunny discovery' that just keeps on going and going and going."

■ The district court abused its discretion by prohibiting further discovery relating to the information provided by Grooms and Teachy. The court should have allowed further discovery because the significance of each of the witnesses was not previously known. J.P. offered to provide the district court, *in camera*, with transcripts of the interviews to demonstrate the relevance of the new information. Both Phillip Felton and Frank Glowczewskie allegedly possess information that LifeNet's screening procedures are different than the procedures the defendants assert LifeNet follows. Anderson and Leslie were thought not to have made any tissue procurement decisions before the Grooms and Teachy interviews.[13] The interviews, however, suggested that both Anderson and Leslie made binding donor decisions that were never reviewed or ratified. Contrary to the district court's suggestion, there was no reason for J.P. to know the significance of the four individuals prior to the interviews and no reason that they should have been contacted earlier. Therefore, Felton, Glowczewskie, Anderson, and Leslie all possessed new and relevant evidence that should be discoverable.

■ The district court erred in prohibiting discovery and prohibiting J.P. from following evidentiary leads. The timing of J.P.'s request—seven months prior to trial—

---

**13.** LifeNet's Director, Scott Bottenfield, stated in his deposition that neither Anderson nor Leslie made any donor procurement decisions that were not immediately ratified by their supervisor who was a medical doctor.

obviates any surprise to the defendants. *See Voelker*, 859 P.2d at 810. The district court exceeded its authority by arbitrarily prohibiting discovery and endorsements seven months before trial. *Consolidated Hardwoods*, 811 P.2d at 442. Furthermore, Rule 16(f) permits discovery if completed as late as thirty days before trial.[14] *Voelker*, 859 P.2d at 810. Therefore, the defendants would not be prejudiced by the introduction of new and relevant evidence, the significance of which was only recently recognized.

Accordingly, the district court abused its discretion in prohibiting discovery, endorsements, and motions in August 1993 and January 1994, and in refusing to allow the additional discovery of the fruits of the interviews with Grooms and Teachy.

### IV

For the foregoing reasons, the district court abused its discretion in denying J.P.'s motions to endorse witnesses and in freezing discovery. Accordingly, we reverse the orders of the district court and make the rule to show cause absolute.

ROVIRA, C.J., dissents, and VOLLACK, J., joins in the dissent.

Chief Justice ROVIRA, dissenting:

The majority concludes that in each of the four challenged discovery rulings the district court abused its discretion in denying J.P.'s (plaintiff) motions for supplemental disclosure of witnesses and permitting further discovery. In my opinion, the district court's rulings were not an abuse of discretion but rather, constituted a reasonable attempt at docket control and case management which is permissible under C.R.C.P. 16. Therefore, I dissent.

### I

Plaintiff's first discovery request sought the endorsement of Dr. Day as a substitute for three previously endorsed experts in the area of orthopedic surgery. Plaintiff ex-

plained that problems had arisen with respect to each of her other three experts and thus, the endorsement of Dr. Day was needed. The majority concludes that the denial of this motion constituted an abuse of discretion because "[o]rthopedic issues are relevant to the underlying action" and "the defendants would not suffer prejudice if Dr. Day were endorsed." Maj. op. at 753.

The second request sought to endorse an economist, Dr. Pacey, in plaintiff's expert designation whose name and summary of opinions had initially been omitted from that designation. The majority disregards the trial court's conclusion that the summary of Dr. Pacey's opinions were not provided in a timely manner and instead, holds that "any potential prejudice [to defendants] is cured by the continuance of the trial." Maj. op. at 754.

The third discovery request sought the endorsement of two law enforcement officials (Booth and Adams) who had investigated the murder of the donor whose tissue was used in plaintiff's operation. Plaintiff argued Booth and Adams' testimony would bear on the question of the appropriateness of using the donor's tissue. While acknowledging that the endorsement of these witnesses could have been submitted earlier, the majority holds that the failure to timely endorse these witnesses "was neither willful, grossly negligent, prejudicial, nor made in bad faith." Maj. op. at 755–756. Thus, the majority concludes the trial court abused its discretion in denying this request.

Finally, after the trial court permitted plaintiff to endorse two new witnesses (Grooms and Teachy) who had information bearing on LifeNet's donor screening practices, plaintiff moved to endorse additional witnesses discovered as a result of the information provided by Grooms and Teachy. The trial court refused to allow the additional discovery. Again, the majority concludes that this additional discovery should have been permitted because the significance of the other witnesses was not previously

---

**14.** The district court's characterization of the discovery as "irrelevant and inadmissible" reflects an unduly restrictive view of discovery. Information may be relevant for purposes of discovery even if it is not admissible at trial. *Lucas v. District Court*, 140 Colo. 510, 345 P.2d 1064 (1959); *Sewell v. Public Service Co. of Colorado*, 832 P.2d 994 (Colo.App.1991).

known to plaintiff and "defendants would not be prejudiced by the introduction of new and relevant evidence...." Maj. op. at 757.[1]

In short, the majority holds that in each instance, because the sought after discovery will be helpful to plaintiff's case and because defendants will not be prejudiced by undue surprise as a result of the two continuances of the original trial date, the trial court abused its discretion in denying plaintiff's motions.[2] In my opinion, by emphasizing plaintiff's need and the remedial effects of the trial continuances, the majority has significantly intruded upon the ability of trial courts to exercise their discretion in guiding pretrial discovery, managing complex civil cases, and controlling their dockets.

## II

The purposes of Rule 16 include not only providing adequate time for parties to prepare for trial and the avoidance of undue surprise and trial by ambush but also, "[t]he purpose of this Rule 16 is to define and clarify the responsibilities of and options available to the parties and the court to facilitate a fair and speedy resolution of civil disputes with a minimum of inconvenience and expense." C.R.C.P. 16. "A trial data certificate serves an important function in aiding docket control, standardizing local pre-trial procedure, and requiring the parties to focus their issues." *Nagy v. District Court*, 762 P.2d 158, 162 (Colo.1988).

While Rule 16 does not address the effect of a trial continuance on disclosure deadlines, the rule clearly requires early disclosure. Detailed disclosure is required within 180

days after the case is at issue. C.R.C.P. 16(a). In this initial disclosure, each party is required to disclose claims and defenses, undisputed and disputed issues, legal authorities, damage claims, proposed stipulations, factual and expert witnesses, exhibits, settlement information, and a discovery plan specifying the type of discovery, time frames and from whom discovery will be sought. C.R.C.P. 16(a)(I)–(XV).

Supplementation of the disclosure certificate is not a matter of unrestricted right but is subject to the procedures and standards set forth in C.R.C.P. 16(b). Certain matters may be supplemented at any time, such as stipulations and undisputed facts. *See* C.R.C.P. 16(b)(5). Other matters, such as statement of claims and defenses, disputed issues, points of law and itemization of damages, may be supplemented "if not known at the time of the filing of the disclosure certificate." C.R.C.P. 16(b)(1). Supplementation of lay witnesses is permitted if their identity and or significance was not known at the time of the filing of the disclosure certificate. "The supplementation shall state why the witness could not have been disclosed earlier." C.R.C.P. 16(b)(2). Supplementation of expert witnesses is allowed if "not known at the time of the filing of the disclosure certificate.... The supplementation shall set forth the subject matter of the expert's testimony and state why the expert could not have been disclosed earlier." C.R.C.P. 16(b)(4). These requirements plainly are intended to avoid a never-ending chain of supplemental endorsements by prescribing a time frame in which such endorsements are required, and allowing the extension of that

---

1. Other relevant facts are set forth in the majority opinion, *see* maj. op. at 747–748 and thus, are not repeated here.

2. The majority attempts to discount the breadth of its analysis by stating: "We do not believe, however, that a continuance gives a party free reign to reopen discovery. The requested discovery must still be necessary, requested in good faith, and the delay caused must not be prejudicial." Maj. op. at 753 n. 10.

   In my judgment, and in spite of this caveat, it is clear that the majority's analysis essentially stands for the proposition that when a trial continuance is granted, parties may begin discovery anew so long as that discovery falls within the

time limits imposed by C.R.C.P. 16 as to the new trial dates. As its analysis for each of the discovery motions at issue illustrates, there apparently will never be prejudice to an opposing party as a result of renewed discovery when a trial continuance has been granted. Furthermore, it seems unlikely that a party would seek additional discovery which is not, in some sense, "necessary." Necessity apparently is to be equated with useful. *See* maj. op. at 752–757 (explaining why the testimony of Dr. Day, Dr. Pacey, Booth, Adams, and the four witnesses discovered as a result of Grooms' and Teachy's information will be useful to plaintiff's case). Thus, based on its own analysis, the majority opinion stands as a repudiation of the purported limits of its holding.

time period when necessary, to prevent manifest injustice. *See* C.R.C.P. 16(c).

Whether to allow for additional endorsements of witnesses is a determination committed to the discretion of the trial court and its ruling will be disturbed only on a showing that it was manifestly arbitrary, unfair, or unreasonable. *Cherry Creek School Dist. No. 5 v. Voelker,* 859 P.2d 805, 810 (Colo. 1993); *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987). When the requirements of C.R.C.P. 16 are applied to the discovery motions at issue here, it is clear that the trial court did not abuse its discretion in denying those motions.

## III

The significance of issues pertaining to orthopedic surgery has been known to all the parties since the case began. In my judgment, plaintiff has failed to meet the requirement of showing why she could not endorse a suitable expert in this area in her initial disclosure certificate. It was alleged that plaintiff's problems with her experts were the result, in part, of interference and pressure exerted by some of the defendants. However it was also alleged that plaintiff was merely seeking to secure a better expert than the one she initially commissioned. The trial court was in the best position to assess what plaintiff was trying to achieve by endorsing Dr. Day and why.[3] Such a determination is, of course, the type which is left to the discretion of the trial court. This judgment should not be second guessed absent an abuse of discretion.

So too with economic issues Dr. Pacey is expected to testify to. As the trial court's order denying the endorsement of Dr. Pacey states: "At no time has a proposed endorsement of Dr. Pacey been filed with the court which is in compliance with C.R.C.P. 16...." Though the trial court was willing to accept plaintiff's explanation that "the word processor [was responsible for] deleting Dr. Pacey's proper endorsement," this fact alone does not mandate that a court permit the supplemental endorsement of witnesses—bad faith is not required in order to deny supplemental endorsements. *See infra* pp. 760–761. Moreover, for the reasons identified by the trial court, no manifest injustice will result to plaintiff if Dr. Pacey is not permitted to testify because "[n]o defendant has endorsed an economist to testify as an expert witness" and in light of the fact that "juries commonly decide the amount of damages without the assistance from an expert witness."

Similarly, plaintiff knew of Booth and Adams in December of 1992 when their affidavits were obtained. For reasons that are not immediately apparent however, plaintiff failed to endorse these potential witnesses in the disclosure certificate on February 9, 1993. While the majority may be correct in noting that their testimony will be useful in plaintiff's case and that defendants may not be prejudiced in light of the trial continuance, the fact remains that plaintiff has failed to explain why these witnesses could not have been endorsed earlier as required by C.R.C.P. 16(b)(4).[4]

The trial court allowed the endorsement of Grooms and Teachy. However, the court also cut off further discovery resulting from these witnesses. In light of the purposes of Rule 16, it was not an abuse of discretion for the trial court to close off further discovery.

---

3. The trial court's order denying plaintiff's motion to endorse Dr. Day states, in part,

   [C.R.C.P. 16] certainly does not contemplate the endorsement of an additional expert witness for the reason that the additional witness is a stronger witness than other experts that have already been endorsed. Plaintiff states in paragraph 9 of her motion that Dr. Day's testimony "is necessary in order for the Plaintiff to be able to present her case. Justice mandates [that] an expert with Dr. Day's credentials who is not intimidated and who will not be intimi-

   dated set forth the facts for the jury's consideration."

4. Though plaintiff's motion to endorse Booth and Adams was characterized as an attempt to "clarify" her disclosure certificate, the trial court appropriately concluded that "[u]se of the word 'clarify' will not gloss over the untimely attempt to endorse Adams and Booth. Plaintiff has always known of the involvement of Adams and Booth and has always known that the Defendants would take the position that 'there was nothing to indicate or cause suspicion that [the donor] carried the HIV virus.'"

Plaintiff has sought to endorse four additional witnesses as a result of interviews with Grooms and Teachy. What additional information will emerge from interviewing the four additional witnesses? And what further information might be gained from that information? At some point, discovery must end and the case must go to trial.

In my opinion, the trial court's denial of each of the discovery requests was reasonable and consistent with the mandates of Rule 16. Each ruling is warranted on the grounds that plaintiff had failed to comply with the express provisions of Rule 16 or constituted a reasonable means of effectuating the policies underlying Rule 16. I am willing to concede that, based on an analysis such as that proposed by the majority, it would have been reasonable for the trial court to grant each of the motions. However reaching a contrary conclusion, as the trial court did, falls far short of an abuse of discretion.

### IV

In the name of liberally construing pretrial discovery rules, the majority has ignored the express requirements of Rule 16. The majority makes no attempt to show that Dr. Pacey, Booth or Adams could not have been properly endorsed earlier. Rather, the majority concludes that because plaintiff has not acted in bad faith, the sought after information will be useful to her case, and because defendants will suffer no prejudice in light of the trial continuances, the trial court should have reopened discovery in this case. Such a conclusion not only is contrary to the purposes of Rule 16, it ignores the express provisions of that rule.

The majority seeks to support its conclusion by asserting that witness preclusion "is a severe sanction and should only be invoked when there has been serious misconduct by the party seeking modification. . . ." Maj. op. at 751. The majority is wrong on both counts. Precluding a witness from testifying when that witness is not properly identified in a pretrial disclosure certificate, far from being the severe sanction the majority believes it to be, is instead a common practice. Indeed, federal circuit courts routinely decide that it is not an abuse of discretion to preclude witnesses from testifying at trial when those witnesses have not been properly identified in a pretrial order. *See, e.g., Sexton v. Gulf Oil Corp.,* 809 F.2d 167 (1st Cir.1987); *Napolitano v. Compania Sud Americana de Vapores,* 421 F.2d 382 (2d Cir.1970); *Ely v. Reading Co.,* 424 F.2d 758 (3d Cir.1970); *Lirette v. Popich Bros. Water Transp., Inc.,* 660 F.2d 142 (5th Cir.1981); *Campbell Indus. v. M/V Gemini,* 619 F.2d 24 (9th Cir.1980); *Grant v. Brandt,* 796 F.2d 351 (10th Cir.1986).

Similarly, the majority is incorrect in asserting that witness preclusion is only justified when the failure to properly disclose a witness rises to the level of "serious misconduct." The majority cites *Freedman v. Kaiser Foundation Health Plan,* 849 P.2d 811, 815 (Colo.App.1992), as support for this conclusion. *Freedman* did not address the question of witness preclusion but rather, it involved limiting the scope of an expert's testimony. The court held that "[w]hether such a sanction should be imposed rests within the sound discretion of the trial court, and absent a clear abuse of that discretion, its determination will not be disturbed." *Id.* at 815. *Freedman* says nothing about the appropriateness of witness preclusion as a sanction nor that serious misconduct is a prerequisite for imposing that sanction.

More important, however, is that by requiring that serious misconduct be shown as a prerequisite for ordering witness preclusion, the majority has ignored the express requirements of C.R.C.P. 16(b). As noted above, Rule 16 provides that a party, in seeking a supplemental endorsement of a witness, "*shall* set forth the subject matter of the expert's testimony and state why the expert could not have been disclosed earlier." Under the majority's holding, a party could completely fail to comply with this provision and yet a trial court would be powerless to preclude the proposed witness from testifying unless the failure to make disclosure earlier amounts to serious misconduct. In short, the majority has written out of Rule 16 the mandatory requirements provided therein and in their place, has established that serious misconduct is required to preclude a

witness from testifying regardless of whether the provisions of C.R.C.P. 16 have been complied with.

The majority has unnecessarily intruded on the ability of trial courts to exercise their discretion in managing cases. In my judgment, the micromanagement of pretrial discovery is not a proper role for this court.

Accordingly, I respectfully dissent.

I am authorized to say that Justice VOLLACK joins in this dissent.