**Rebecca N. LASCANO, Plaintiff–Appellant,**

v.

**Gloria M. VOWELL, Defendant–Appellee.**

**No. 94CA1268.**

Colorado Court of Appeals, Div. I.

Sept. 5, 1996.

. Bragg & Baker, P.C., Douglas E. Bragg, Christopher W. Jeffress, Denver, for Plaintiff–Appellant.

Creamer and Seaman, P.C., Thomas J. Seaman, Denver, for Defendant–Appellee.

Opinion by Judge METZGER.

In this negligence action arising out of an automobile accident, plaintiff, Rebecca N. Lascano, appeals the portion of the judgment entered on a jury verdict against defendant, Gloria M. Vowell, which awarded her non-economic damages of $4,500. We reverse and remand for a new trial on the issue of damages.

## I.

Plaintiff first contends that the trial court abused its discretion in its timing in admitting into evidence a surveillance movie filmed by defendant shortly before trial. We agree.

Effective January 1995, C.R.C.P. 16(a) was repealed and re-adopted with substantial modifications. Because the trial in this case occurred before that time, the prior version of this rule (C.R.C.P. 16 (repealed)) governs this action.

At all times pertinent to this dispute, C.R.C.P. 16(a) (repealed) required that parties to a civil action must file disclosure certificates at least 90 days before trial. In these certificates, each party was required to include a description, attached copy, or photograph of any exhibit that he or she might offer at trial.

Litigants were permitted to supplement their disclosure certificates up to 80 days before trial to include information concerning exhibits or witnesses not known to them at the time the disclosure certificate was filed. C.R.C.P. 16(b) (repealed); *see Consolidated Hardwoods, Inc. v. Alexander Concrete Construction, Inc.*, 811 P.2d 440 (Colo.App.1991).

■ Moreover, under C.R.C.P. 16(c) (repealed), parties were bound by the information provided in their disclosure certificates. The trial court could allow the endorsement of exhibits later than 80 days before trial only as needed "to prevent manifest injustice." In the event a party failed to comply with the requirements of this rule, the trial court was authorized to impose appropriate sanctions. *See J.P. v. District Court*, 873 P.2d 745 (Colo.1994).

■ The purpose for requiring pretrial disclosure of witnesses and exhibits is to prevent undue surprise and to allow all parties an opportunity for adequate preparation. Thus, it was within the trial court's discretion to determine whether a violation of C.R.C.P. 16 (repealed) required the imposition of sanctions and, if so, the nature of the sanction to be imposed. *Four Strong Winds, Inc. v. Lyngholm*, 826 P.2d 414 (Colo.App.1992).

■ C.R.C.P. 16 (repealed) was to be construed liberally so as not to deny a party reasonable opportunity to present relevant evidence. However, in liberally construing this rule, the trial court had an obligation not to allow other parties to be prejudiced by the supplementation of witnesses or endorsements. Thus, a party's ability to supplement a disclosure certificate was not boundless. *J.P. v. District Court, supra; see also Consolidated Hardwoods, Inc. v. Alexander Concrete Construction Inc., supra.*

■ Likewise, a trial court's discretion to permit late supplementation was limited, and a trial court abused its discretion if its decision was manifestly arbitrary, unfair, or unreasonable. *See People v. Milton*, 732 P.2d 1199 (Colo.1987). Thus, the decision of the trial court should be reversed if its efforts to avoid prejudice and delay to one party substantially tipped the balance and thereby unreasonably denied the other party his or her day in court. *J.P. v. District Court, supra.*

■ So-called "surveillance movies" demonstrating a personal injury plaintiff's ability to carry on certain activities are discoverable and are subject to production through pretrial procedure. *Crist v. Goody*, 31 Colo. App. 496, 507 P.2d 478 (1972).

In *Crist*, the defendant in a personal injury action had filmed a surveillance movie of the plaintiff conducting routine activities. The defendant did not produce the film nor was its existence mentioned before trial. The trial court in its discretion allowed the film to be admitted into evidence and to be shown to the jury. However, a division of this court concluded that the trial court had abused its discretion in denying the plaintiff's motion for a mistrial or a continuance to avoid the effect of undue surprise.

■ Here, investigators working for defendant's insurer secretly made a surveillance movie of plaintiff on March 30 and April 2, 1994. Thereafter, on April 13, defendant moved to supplement her disclosure certificate and to endorse the movie as an exhibit for trial, which was scheduled to begin on May 2, 1994.

Plaintiff then filed a motion *in limine* seeking the exclusion of the surveillance movie and the testimony of those who had prepared it, arguing that defendant had sought endorsement too close to the trial date. In this motion, plaintiff expressly stated that, because the case had been pending for an extended time, the trial, scheduled to begin on May 2, 1994, should not be continued.

The trial court heard arguments on plaintiff's motion before trial and intermittently throughout plaintiff's case-in-chief. It was only after defendant was well into the presentation of her case that the trial court finally decided to permit the late endorsement of the surveillance movie and to admit it.

Under these circumstances, we view that ruling to be an abuse of the trial court's discretion.

First, defendant did not tender the movie 80 or more days before trial; thus, it could not have been made part of a supplemental disclosure certificate. *See* C.R.C.P. 16(b) & (c) (repealed). Moreover, defendant made no showing that the admission of the movie was essential "to prevent manifest injustice" and the trial court did not find that it would be.

Second, the late attempt to endorse the exhibit left plaintiff with few options. On

learning of the existence of the movie, plaintiff could have moved for a continuance to permit her to develop a strategy for meeting this evidence. *See, e.g., Crist v. Goody, supra; see also J.P. v. District Court, supra.* However, in our view, plaintiff was not required to do so. Rather, she was entitled to rely on the requirements of C.R.C.P. 16(c) (repealed) which expressly limited a party's ability to endorse an exhibit less than 80 days before trial unless the circumstances required that the late endorsement be allowed to prevent manifest injustice.

By delaying its ruling on the admission of this exhibit until more than halfway through the trial, the trial court denied plaintiff the ability to prepare any effective method of meeting this evidence. Plaintiff was given the Hobson's choice of referring to the movie during *voir dire,* her opening statement, and her case-in-chief, possibly waiving any objection to the later admission of the movie, or waiting until the trial court had ruled on the issue of admissibility of the movie, thus preserving her objection but denying her any meaningful opportunity to present contrary evidence.

Third, plaintiff was placed at a significant disadvantage by having to rebut the exhibit without sufficient time to prepare properly.

Finally, the prejudice to plaintiff brought about by the admission of this movie is clear. The five-minute movie showed short images of plaintiff, on separate occasions, moving about without any indication of neck or back pain.

Thus, we view the timing of the admission of this exhibit to be an abuse of discretion. And, considering the effect such an error may have had on the jury's evaluation of the evidence, we conclude that this error requires reversal of the judgment and a new trial on the damages issues.

As guidance for the trial court, on retrial the present version of C.R.C.P. 16 shall be applicable, and if the surveillance movie is again proffered by defendant, its admissibility should be determined in accordance with that rule.

## II.

Among issues that may arise on retrial is plaintiff's argument that the trial court erred in instructing the jury regarding the effect of later events, unrelated to the automobile accident, on her injuries. We agree that this issue should be reconsidered on remand.

When an instruction fairly presents the issues and is supported by the evidence, a party is entitled to have it given. *Downing v. Overhead Door Corp.,* 707 P.2d 1027 (Colo. App.1985).

In determining whether jury instructions adequately informed the jury of the applicable legal principles, all of the instructions must be considered as a whole. *Vikman v. International Brotherhood of Electrical Workers,* 889 P.2d 646 (Colo.1995). An instruction that is incomplete or ambiguous may be cured by other instructions. *Gorsich v. Double B Trading Co.,* 893 P.2d 1357 (Colo.App.1994).

Nevertheless, unless cured by the instructions as a whole, it is reversible error for a trial court to give an erroneous instruction. *Mile Hi Concrete, Inc. v. Matz,* 842 P.2d 198 (Colo.1992).

In general, a plaintiff is entitled to recover the damages which were the natural and probable result of the defendant's negligence. *Cope v. Vermeer Sales & Service of Colorado, Inc.,* 650 P.2d 1307 (Colo.App. 1982).

Here, using an instruction modeled after *CJI–Civ.3d* 6:9 (1988), the trial court instructed the jury:

The plaintiff . . . claims damages from the defendant . . . for injuries caused by a motor vehicle accident on May 30, 1989. If you find that the defendant's negligence, if any, was a cause of any such injuries, then the plaintiff . . . may recover all damages caused by that event. But if you find that the plaintiff was later injured in August of 1989 in a log ride at [an] Amusement Park; in July 1990 when she fell from a stool, and in October 1990 when biting into an apple, which were not caused by any acts or omissions of the defendant, then the plain-

tiff may not recover any damages caused only by the later accidents.

However, if you find the subsequent accidents aggravated any injuries caused by the motor vehicle accident of May 30, 1989, then you must separate, if possible, those damages caused by the automobile accident of May 30, 1989, from those caused by the accidents of August 1989, July 1990 and October 1990, and the plaintiff may recover all those separate damages caused only by the motor vehicle accident of May 30, 1989.

If it is not possible to separate any damages caused by the motor vehicle accident of May 30, 1989 from those caused by accidents of August 1989, July 1990 and October 1990, then the plaintiff may recover those damages only from the date of the motor vehicle accident to the date of the August 1989 log ride at [the] Amusement Park accident.

Such an instruction is appropriately given when, after the injury giving rise to the plaintiff's tort action, a later event or incident either: (1) causes a new, unrelated injury to the plaintiff or (2) aggravates the injury the plaintiff suffered as a result of the defendant's tortious conduct. *See Bruckman v. Pena*, 29 Colo.App. 357, 487 P.2d 566 (1971); *see also Guerrero v. Bailey*, 658 P.2d 278 (Colo.App.1982).

Here, the evidence did not show that any of these later incidents caused an injury to plaintiff that was separate and unrelated to those caused by the automobile accident. Indeed, defendant appears to concede that there was not sufficient evidence of a separate injury, arguing instead that the three incidents aggravated the injuries plaintiff had sustained in the automobile accident.

Thus, for the instruction to be appropriate, there must have been evidence showing that one or more of the later incidents aggravated plaintiff's injuries. The resolution of this question, in turn, depends on how the term "aggravated" is defined in this context.

Here, no definition of the term "aggravated" was provided in the instructions. In the absence of any definition, we presume that the jury applied the common meaning of the word "aggravated." *See Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo.1992).

To "aggravate" an injury can mean: "(3) to make worse, more serious, or more severe: INTENSIFY" or "(4)(b) to produce inflammation in: IRRITATE." *Webster's Third New International Dictionary* 41 (1986).

The first definition is consistent with the term as it is used in *CJI–Civ.3d* 6:9, which lists the words "increased" or "worsened" as acceptable synonyms for "aggravated." *See, e.g., Guerrero v. Bailey, supra.* The second definition implies an inflammation or irritation of an injury, causing additional pain but not necessarily increasing or worsening the injury itself. This common definition does not conform to the requirement that increased injury must be shown.

The factual context of plaintiff's claims here could not have provided a basis for the jurors to determine which of these two equally plausible meanings was appropriate. The only evidence offered of aggravation of plaintiff's injuries related to three events in which plaintiff reported feeling increased pain. The jurors could have drawn conflicting inferences about whether the inflammation of the prior injury constituted an aggravation of it.

Because the term "aggravated" was susceptible to more than one reasonable meaning in this factual context, the instruction was ambiguous. And, since only one of the definitions of this term accurately reflects the applicable law, it is possible that the jurors were confused or misled by the ambiguous wording. Moreover, this defect was not cured by the other instructions. Thus, in our view, the instructions as a whole inadequately appraised the jury of the appropriate meaning of the word "aggravated." *See Armentrout v. FMC Corp., supra.*

Therefore, on remand, the applicability of this instruction must be reconsidered in light of the evidence presented. If it is determined that the evidence supports such an instruction, the trial court should determine whether it is necessary to provide further definitions of terms.

## III.

Plaintiff next argues that the trial court erred in instructing the jury on the affirmative defense of failure to mitigate damages. We agree that this issue must be reconsidered on remand.

A plaintiff has the duty to take such steps as are reasonable under the circumstances to mitigate the damages sustained. Thus, a plaintiff may not recover damages for injuries that might reasonably have been avoided. *Ballow v. PHICO Insurance Co.*, 878 P.2d 672 (Colo.1994).

However, a plaintiff has no duty to anticipate a defendant's negligence and has no duty to mitigate damages until after the original injury has occurred. *Burt v. Beautiful Savior Lutheran Church*, 809 P.2d 1064 (Colo.App.1990).

Here, as part of the mitigation of damages instruction, the trial court instructed the jury that:

This defense is proved if you find all of the following:

1. the plaintiff failed to follow the advice of her doctors and dentists.

2. such failure caused the plaintiff to incur more injuries than she otherwise would have; and

3. the amount of damages caused by such failure.

At trial, plaintiff's dentist testified that, before the accident, he had told her to wear a "night-guard" to help prevent injury to her jaws caused by grinding her teeth in her sleep. He further testified that she had refused to wear the night-guard for some time and later wore it only occasionally.

A chiropractor who had treated plaintiff testified that she had admitted to him that she had not worn the night-guard for several months after the accident. Another dentist testified that the failure to wear the night-guard could have caused deterioration of the temporomandibular joint in her jaw, a joint that plaintiff claimed was injured as a result of the accident.

Similarly, evidence was presented that, after the accident, plaintiff had failed to wear a splint in her mouth as directed by her dentist. The dentist testified that he had prescribed the splint with the intent that its use would help plaintiff avoid the need for surgery.

Here, conflicting evidence was presented whether plaintiff's decisions not to wear the night-guard or splint after the automobile accident were unreasonable under the circumstances. However, the instruction given to the jury did not require the jury to determine the reasonableness of plaintiff's conduct. Rather, the jurors were instructed that they could reduce plaintiff's damages if they found that she had failed to follow her doctors' advice and that she had incurred greater injuries as a result of her failure to do so.

The question whether plaintiff's conduct was reasonable under the circumstances was a necessary factual predicate to a finding that she had failed to mitigate her damages. As such, it should have been addressed to the jury as fact finder. Because the instruction took this question from the jury, its use here was error, and it would need appropriate revision if again proffered on remand. *See Martin v. Porak*, 638 P.2d 853 (Colo.App. 1981).

## IV.

In light of this disposition, because plaintiff's other contentions of error are either moot or not likely to arise on retrial, we need not address them.

The judgment is reversed and the cause is remanded for a new trial on the issue of damages.

CRISWELL and TURSI*, JJ., concur.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1995 Cum.Supp.).