CITY OF WESTMINSTER, a municipal corporation, Plaintiff–Appellant,

v.

MOA, INC., a Colorado professional corporation; Carrier Corporation, a Delaware corporation; and Parker Electronics, Inc., its subsidiary corporation, Defendants–Appellees.

Nos. 91CA1226, 92CA0117.

Colorado Court of Appeals, Div. V.

Oct. 14, 1993.*

Rehearing Denied Dec. 16, 1993.

* Prior Opinion announced July 1, 1993 was Withdrawn. Petition for Rehearing Granted.

Robert C. Douglas, Jr., Englewood, for plaintiff-appellant City of Westminster.

Knapp, Lee and Cardi, P.C., Byrum C. Lee, Jr., Denver, for defendant-appellee MOA, Inc.

Clanahan, Tanner, Downing and Knowlton, P.C., Peter T. Moore, Denver, for defendants-appellees Carrier Corp. and Parker Electronics, Inc.

Opinion by Judge JONES.

In this action for damages allegedly resulting from defects in the design and construction of its city hall, plaintiff, City of Westminster, appeals from a judgment in favor of defendants, MOA, Inc. (MOA), Carrier Corporation, and Parker Electronics, Inc. (Carrier/Parker). Westminster settled its claims with certain other defendants before the filing of this appeal, and the claims against the general contractor and its surety and the general contractor's cross-appeal were settled subsequent to the filing of the appeal. We reverse and remand for a new trial.

In 1986, Westminster contracted with MOA to provide architectural services for the design and construction of a new city hall. Carrier/Parker manufactured components for the heating, ventilation, and air-conditioning system.

In February 1988, Westminster occupied the building, and in May 1988, it discovered that rain water was penetrating into the building through a brick cavity wall, causing interior damage. MOA and the general contractor agreed to remedy the problem and further agreed to mediation on the issue of allocation of costs for these repairs. The city was not a party to this mediation.

In preparation for the mediation, MOA contacted John Reins, an employee of Madsen, Kneppers and Associates (Madsen), to act as an expert. Reins declined to act as MOA's expert and, instead, recommended Lee Farrell, also an employee of Madsen. Farrell was retained by MOA and, during mediation, acted as an expert on MOA's be-

half on the issue of rainwater penetration of the building.

Subsequently, the city discovered other defects in the design and construction of the building. The heating, ventilation, and air conditioning system was not performing as expected, and movement of the foundation piers of the building was causing interior and exterior building damage. Several firms studied the foundation movement problem, and three firms, in March, August, and October 1989, issued reports to Westminster.

Prior to the filing of its complaint, Westminster retained Reins, and, beginning early in 1990, he began to study building movement for the city. When Westminster endorsed Reins as an expert witness in its initial disclosure certificate in September 1990, MOA moved to have Reins disqualified from testifying. On December 31, 1990, the court, finding that a conflict of interest existed and that it would be prejudicial, unfair, and inappropriate to allow Reins to testify as an expert, granted MOA's motion.

On January 17, 1991, Westminster moved to clarify the court's order disqualifying Reins and for an extension of time within which to identify new experts to testify on the structural problems of the building. On February 11, Westminster filed its supplemental disclosure certificate, listing four new expert witnesses, including an architect, a heating and air conditioning expert, an engineer, and a certified public accountant, as well as several new fact witnesses. However, on February 13, 1991, the court denied Westminster's motion.

Prior to trial, Westminster settled with two defendants named in the complaint, a mechanical engineer and a supplier. Also, it settled its heating, ventilation, and air conditioning claims against MOA. The supplier paid $20,000, the mechanical engineer paid $40,000, and MOA paid $60,000 in these settlements. The engineer and the supplier were later designated as non-parties at fault.

The defendants objected to the endorsement of the new witnesses, as well as to other parts of the supplemental disclosure certificates, and the court sustained the objections, striking the certificate. Westmin-ster's counsel advised the court that, given its previous order and without waiving any right, Westminster would not pursue those claims. Thus, Westminster did not present evidence on these claims at trial, and MOA was dismissed from the case.

The jury found that Westminster had suffered damages in the amount of $135,000. It allocated responsibility at 60% to the general contractor, 0% to Carrier/Parker, 20% to the non-party mechanical engineer, and 20% to the non-party supplier. The trial court then reduced the general contractor's liability to $21,000.

## I.

■ Westminster first asserts that the trial court abused its discretion in disqualifying its expert from testifying on issues of structural defects and rainwater intrusion. Although Westminster concedes that MOA discussed the issue of rainwater intrusion with Farrell, it contends that there is no evidence that MOA disclosed confidential information to anyone from Madsen concerning the structural movement of city hall. The city also asserts that Reins' long-term observations of the building movement made him unique and that no other expert would have been able to duplicate Reins' observations at the time that the court issued its order on disqualification. According to Westminster, the trial court's order would have precluded any new expert from relying on Reins' survey data in formulating his opinions and that it was placed at a serious disadvantage by being prevented from presenting Reins' testimony about his observations and conclusions. We reject these arguments.

The question of disqualification of an expert for a conflict of interest was addressed in *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246 (E.D.Va.1991). There, the court stated that, in cases in which the parties dispute whether retention and passage of confidential information occurred, the courts should undertake a two part inquiry:

First, was it objectively reasonable for the first party who claims to have retained the consultant ... to conclude that a confidential relationship existed?

Second, was any confidential or privileged information disclosed by the first party to the consultant?

. . . .

Affirmative answers to both inquiries compel disqualification. But disqualification is likely inappropriate if either inquiry yields a negative response.

*Wang Laboratories, Inc. v. Toshiba Corp., supra,* at 1248.

The court further acknowledged that the inherent power of the courts to disqualify experts exists in furtherance of the judicial duty to protect the integrity of the adversary process and to promote public confidence in the fairness and integrity of the legal process.

■ Disqualification ordinarily should not occur when a confidential relationship existed but no privileged information was communicated or, alternatively, when no confidential relationship existed but privileged information was nonetheless disclosed. The party seeking disqualification bears the burden of establishing both the existence of a privilege and its non-waiver. *Mayer v. Dell,* 139 F.R.D. 1 (D.D.C.1991).

Asserting that Reins received no information from his associate as to the rainwater penetration issue and because there is no need to hold expert witnesses to the strict standards applied to attorneys, Westminster contends that its expert should not have been disqualified from testifying as to any issue. Westminster asserts that it does not appear that Farrell was in possession of any confidential information not waived by MOA's endorsement of Farrell as an expert in the mediation and that Farrell and Reins did not communicate concerning the brick cavity wall issue. We reject these arguments.

Here, upon Reins' recommendation, MOA retained Farrell, and MOA's contention that Farrell is in possession of information from MOA concerning moisture intrusion and MOA's methods of operation and decision-making process is undisputed. Such facts, in our view, suffice to support a conclusion that a confidential relationship existed between MOA and Farrell.

The question then becomes one of the extent to which this information should be imputed to Reins. Westminster submitted affidavits from both Reins and Farrell. Reins' affidavit states that no confidential information provided by MOA to Farrell was communicated to Reins by Farrell or Madsen. Farrell's affidavit asserts that the information he learned from MOA concerned only the damage due to rainwater intrusion. Nevertheless, it is undisputed that Reins and Farrell were members of the same firm. In addition, although the structural movement and rainwater intrusion issues are denominated by the parties as being distinct, they are nonetheless both aspects of the same overall dispute involving the same building.

Thus, two members of the same firm were involved in a complex and important subject in which the parties by whom they were retained both have important adverse interests. Even if no disclosures occur, the court and the public are faced with the reality that a single firm has acted as a consultant for both sides in an adversarial situation. *See Wang Laboratories, Inc. v. Toshiba Corp., supra.*

Taking into account its duty to protect the integrity of the judicial process, the trial court could reasonably have concluded that a conflict of interest had arisen that was sufficient to justify disqualifying Reins. *See Marvin Lumber & Cedar Co. v. Norton Co.,* 113 F.R.D. 588 (D.Minn.1986) (the threat or potential threat that confidences may be disclosed is enough to disqualify). Under such circumstances, we conclude that the trial court did not abuse its discretion in doing so.

## II.

■ Westminster next asserts that the trial court abused its discretion in denying it the opportunity to add an expert to replace Reins. Westminster contends that the disqualification of Reins placed Westminster in the position of trying to locate a qualified structural engineer who could do the extensive testing and observation necessary to form an opinion on complex issues and that this process could not be completed within the approximately five weeks remaining be-

fore supplemental disclosure certificates were due. We agree.

■ Trial courts have broad discretion in allowing the late endorsement of witnesses. *C.K.A. v. M.S.*, 695 P.2d 785 (Colo.App.1984). However, courts abuse that discretion if their decision is manifestly arbitrary, unreasonable, or unfair. *See People v. Milton*, 732 P.2d 1199 (Colo.1987). Furthermore, when an opposing party's ability to prepare for trial is not hampered, the trial court may exercise its discretion in the direction of allowing a witness who has not been properly endorsed to testify. *Cf. Wood v. Rowland*, 41 Colo.App. 498, 592 P.2d 1332 (1978).

Westminster filed its disclosure certificate on September 25, 1990, listing Reins as an expert witness to testify concerning building movement and as to plaintiff's claims of improper design and construction. Following the court's order on December 31, 1990, disqualifying Reins, Westminster moved to clarify the order and for additional time, up to March 1, 1991, to identify experts to replace Reins. The trial was scheduled to begin on April 29, 1991. Thus, other parties would have had at least 60 days in which to prepare as to the newly endorsed expert's testimony.

Even if we determined, *arguendo*, that the trial court was not in error to deny endorsement of three of the four witness that Westminster attempted to endorsè in its supplemental disclosure statement because of the perception that these new witnesses inappropriately were introducing new claims into the case at a late date, we would nevertheless conclude that the trial court's order denying Westminster additional time to endorse an expert witness to replace Reins is manifestly unreasonable and unfair.

Having deposed Reins, the other parties were aware of the factual and scientific basis of Westminster's claims concerning building movement and related damage. Furthermore, they had Reins' reports and survey data and were, therefore, aware of what would be the testimony of the witness to be endorsed in support of Westminster's known claims.

Thus, we conclude that the other parties would not have been prejudiced by the late endorsement of at least a replacement expert witness. Accordingly, we conclude that the court's ruling mandates reversal.

III.

■ We agree with Westminster that the trial court erred in refusing to admit into evidence an interrogatory response and report from an agent or employee of Carrier/Parker.

The subject response and attached report qualify as a statement offered against a party made by that party's "agent or servant concerning a matter within the scope of his agency or employment . . . during the existence of the relationship. . . ." CRE 801(d)(2)(D). *See Stevens v. Humana of Delaware, Inc.*, 832 P.2d 1076 (Colo.App.1992); *Halliburton v. Public Service Co.*, 804 P.2d 213 (Colo.App.1990). As such, the document does not constitute hearsay and is admissible.

■ Furthermore, the trial court erred in its determination that the report lacked authenticity.

Near the conclusion of Westminster's case, its attorney requested to read to the jury "an interrogatory response and admission of . . . Carrier–Parker (sic) regarding the report of Charlie Moses when he came to inspect the site in November of 1988." Moses was known to be an employee of Parker Electronics, Inc.

The report concerned Moses' investigation of the HVAC system at the city hall. Parts of the report may be read as an admission from Carrier/Parker that their system would not operate at this altitude as well as would other similar systems, constituting a violation of their implied warranty of merchantability. *See* § 4–2–314(2)(C), C.R.S. (1992 Repl.Vol. 2). Additionally, the report admits that work done to change the safety limits on the heat pumps at the city hall was not recommended by the heat pump manufacturer, *i.e.*, Carrier Corporation. The report also admits that the system cannot be made to satisfy space demands.

The trial court sustained defendants' objections to the interrogatory response and report, finding, "there has not been sufficient

foundation to present this matter to the jury...." In so ruling, the court erred.

The interrogatory response was a "document accompanied by a certificate of acknowledgment executed [as] provided by law by a notary public or other officer authorized ... to take acknowledgments." CRE 902(8). As such, the document was self-authenticating and required no further evidence of authenticity as a condition precedent to its admissibility. *Otani v. District Court,* 662 P.2d 1088 (Colo.1983). *See People v. Wiedemer,* 641 P.2d 289 (Colo.App.1981).

Thus, the trial court erred in failing to admit the response into evidence. And, on remand, the document should be admitted into evidence if offered under the same or similar circumstances as in the previous trial.

In light of our resolution of these issues we deem it unnecessary to consider the parties' remaining contentions.

The judgment is reversed, and the cause is remanded for a new trial as to the remaining issues between Westminster and MOA. Additionally, because of the impact on the claims of Westminster against other parties resulting from the trial court's refusal to admit the interrogatory response and report from Parker's employee, the cause is also remanded for a new trial on liability and damages against Carrier Corporation and Parker Electronics, Inc., concerning defects in the heating, ventilation, and air conditioning system.

HUME, J., concurs.

MARQUEZ, J., concurs in part and dissents in part.

Judge MARQUEZ concurring in part and dissenting in part.

Although I agree with Part I and III of the majority opinion, I respectfully dissent from Part II concluding that the trial court abused its discretion in denying Westminster the opportunity to add an expert to replace John Reins.

A trial court has a wide range of discretionary devices available to it in enforcing proper pre-trial procedure and discovery. *Advance Loan Co. v. Degi,* 30 Colo.App. 551, 496 P.2d 325 (1972).

Trial courts have broad discretion in determining whether to allow the late endorsement of witnesses. *C.K.A. v. M.S.,* 695 P.2d 785 (Colo.App.1984). But the late endorsement of a witness has been held to be an abuse of discretion. *Daniels v. Rapco Foam, Inc.,* 762 P.2d 717 (Colo.1988).

C.R.C.P. 16 provides that a party's disclosure certificate may be supplemented only as provided in that rule. Thus, under C.R.C.P. 16(b), a party may supplement a disclosure certificate no later than 80 days prior to trial.

Trial in this matter was scheduled to begin April 29, 1991. The record indicates Westminster filed its disclosure certificate on September 25, 1990, listing John Reins, a licensed professional engineer, to testify concerning the nature and extent of damages to the structure of the building. The motion of MOA, Inc., to disqualify Reins was granted by order dated December 31, 1990.

Although supplemental disclosure statements pursuant to C.R.C.P. 16, were due February 8, 1991, Westminster chose to file a motion to clarify the order and for additional time to designate expert witnesses to replace Reins. Westminster then filed a supplemental disclosure certificate on February 11, 1991, adding claims, issues, and damages which allegedly were not known at the time the disclosure certificate was filed as well as listing four new experts.

In its supplemental disclosure certificate, Westminster identified a registered architect to testify concerning masonry wall installation and rainwater penetration indicating that the expert had been named as an expert due to the disqualification of Reins to testify as an expert on this issue. The substance of the expert's opinions was to be provided at some future date.

Westminster also stated that it was unable at that time, pending the court's order on outstanding motions, to designate additional experts in the areas of site drainage and water source and structural and mechanical system distress due to soils movement. It did, however, also list an expert on the HVAC system, a licensed professional engi-

neer to testify concerning a water source, and a certified public accountant.

In addition, although Westminster had reports dating to March, August, and October 1989, from other experts who had studied the structural problems of the building, it chose not to list those experts. Rather, it indicated that as of February 11, 1991, it could not designate additional experts in the areas of structural distress due to soils movement.

In my view, Westminster offers no compelling justification for its failure to certify witnesses from these firms promptly after the court's December 31, 1990, order disqualifying Reins or for its continued belief, after the order, that Reins' disqualification would be reversed. *See Daniels v. Rapco Foam, Inc., supra* (late endorsement of an expert witness denied in the absence of an explanation for the party's failure to use expert witness previously endorsed).

I would thus conclude that no reversible error was committed in not allowing late certification of new expert witnesses. Accordingly I would affirm the judgment in favor of MOA and reverse and remand for new trial as to Carrier/Parker.