The CITY OF SPRINGFIELD,
Plaintiff,

v.

REXNORD CORPORATION and RHI
Holdings, Inc., Defendants.

No. Civ.A. 99–30106–MAP.

United States District Court,
D. Massachusetts.

Aug. 24, 2000.

Patricia T. Martinelli, Peter P. Fenton, Harry P. Carroll, City of Springfield, Law Department, Springfield, MA, for City of Springfield, plaintiff.

Berndt W. Anderson, Robert P. Landau, Roberts, Carroll, Feldstein & Peirce, Providence, RI, for Rexnord Corporation, RHI Holdings, Inc., defendants.

*MEMORANDUM AND ORDER WITH REGARD TO MOTION TO OVER-RULE PLAINTIFF'S OBJECTION TO DEFENDANTS' RETENTION OF HALEY & ALDRICH TO PROVIDE ENVIRONMENTAL CONSULTING SERVICES AND EXPERT TESTIMONY (Docket No. 39)*

NEIMAN, United States Magistrate Judge.

The central issue here is whether Haley & Aldrich, an environmental consulting firm hired by Rexnord Corporation and RHI Holdings, Inc. ("Defendants"), should be disqualified as an expert because it has also provided engineering services as a

subcontractor to the City of Springfield ("Plaintiff"). The court believes that, at present, no conflict of interest exists. Accordingly, the court will allow Defendants' motion to "overrule" Plaintiff's "objection" to Defendants' retention of the firm, albeit with two caveats.

## I. BACKGROUND

The underlying facts appear to be generally undisputed. Plaintiff has sued Defendants to recover over $3.3 million in costs and damages to property on Plainfield Street in Springfield, formerly operated by predecessor companies to Rexnord, Inc., which later merged with RHI Holdings, Inc. To help defend the suit, Defendants hired Haley & Aldrich to provide expert environmental consulting. As it turned out, Haley & Aldrich was also a subcontractor to Tighe & Bond, a general engineering firm which had been hired by Plaintiff with respect to a project at the Bondi Island landfill. Tighe & Bond had sought advice from Haley & Aldrich on the structural feasibility of vertically expanding the landfill.

The present case commenced in May of 1999 and discovery has proceeded accordingly. In November of 1999, Defendants—having used Haley & Aldrich's services on a number of projects in the past and wishing to retain the firm for the Plainfield Street matter as well—contacted Haley & Aldrich about the litigation.[1] After Haley & Aldrich drafted a consulting services proposal, it informed Defendants' counsel on December 20, 1999, that it was then involved in Plaintiff's Bondi Island project. Although Haley & Aldrich indicated to Defendants' counsel that it did not view its work on both projects as a conflict of interest, it wanted to inquire of Tighe & Bond, Plaintiff's contractor, to ensure there was no problem.

Shortly thereafter, on December 29, 1999, Haley & Aldrich advised Defendants'

counsel that it had spoken with the responsible Tighe & Bond official who, understanding the circumstances, acceded to Haley & Aldrich's involvement in both matters. At about the same time, Tighe & Bond informed the Deputy Director of Plaintiff's Department of Public Works ("DPW") of the situation. The DPW did not object to the arrangement and, in fact, indicated that it wanted Haley & Aldrich to continue to be involved in the landfill project.

In a letter dated December 29, 1999, Defendants' counsel formally advised Plaintiff's counsel about their intent to retain Haley & Aldrich as an environmental consultant in the present litigation despite its services to Plaintiff, through Tighe & Bond, on the landfill project. The letter opined that there was no conflict of interest due to the dissimilarity of services provided by Haley & Aldrich, but that Defendants' counsel thought it best to advise Plaintiff's counsel of the circumstances. The letter stated further that Haley & Aldrich had not done any past work relating to the Plainfield Street property at issue in the case at bar.

Between December 30, 1999, and March 7, 2000, Haley & Aldrich provided Tighe & Bond with various memoranda regarding geotechnical issues at the landfill and, at the present time, is waiting to learn from Tighe & Bond what additional services, if any, will be required. In the meantime, on February 10, 2000, Haley & Aldrich entered into a formal contract with Defendants with respect to the instant litigation. Haley & Aldrich has since billed Defendants over $48,000 for services provided through June 14, 2000, and there remains additional unbilled time of approximately $650.

On June 8, 2000, Plaintiff's counsel responded to Defendants' December 29, 1999 letter. In the June 8 letter, counsel stated

---

1. More than thirty years ago, Plaintiff, too, had used Haley & Aldrich's services on two     separate projects.

that Plaintiff objects to and will "resist any attempt by [D]efendants to utilize the firm of Haley & Aldrich in this litigation" because of "the obvious potential for a conflict of interest." (A copy of the June 8 letter is attached to Defendants' memorandum of law in support of their motion to overrule (Docket No. 40).) Plaintiff has since added certain facts to this allegation for the court's consideration. Those facts, described more fully below, center on Haley & Aldrich's participation in the landfill project. The parties' inability to resolve the issue has led to Defendants' present motion to overrule Plaintiff's objection.

## II. *STANDARD OF REVIEW*

An objecting party has the burden of proving that there exists a conflict of interest warranting disqualification. *See English Feedlot, Inc. v. Norden Lab., Inc.,* 833 F.Supp. 1498, 1501 (D.Col.1993). In this case, that burden falls on Plaintiff, despite the fact that its objection has been drawn to the court's attention through Defendants' motion and not through the typical procedure for resolving expert conflict issues, an objector's motion to disqualify. *See, e.g., Cordy v. Sherwin–Williams Co.,* 156 F.R.D. 575, 576 (D.N.J.1994). As described more fully below, the court agrees with Defendants that, given the complex nature of this case, they did not have the luxury of waiting for Plaintiff to file a motion to disqualify, let alone for the February 14, 2001 status conference at which the question of experts is scheduled to be addressed. Rather, faced with Plaintiff's objection—particularly Plaintiff's counsel's assertion that, by continuing to employ Haley & Aldrich, Defendants would be "proceed[ing] at [their] own risk and will be made to bear the consequences" (Letter from Harry P. Carroll dated June 21, 2000 (attached to Docket No. 40))—Defendants had no choice but to bring the issue to the attention of the court through their present motion.

## III. *DISCUSSION*

Plaintiff claims as an initial matter that the conflict of interest issue is not yet ripe. Alternatively, Plaintiff contends that, if the issue is ripe, Haley & Aldrich should in fact be disqualified as an expert. The court will address each argument in turn.

### A. *Ripeness*

■ As Plaintiff asserts, Judge Ponsor's amended pre-trial scheduling order provides that the question of expert discovery will not be addressed until the February 14, 2001 status conference. In the court's view, however, Defendants have the right to have settled, to the extent possible, the issue of conflict raised by Plaintiff in its June 8 objection.

The early retention and assistance of experts is certainly appropriate in complex hazardous substance cases. This particular action spans at least forty years of alleged contamination and thousands of documents have to be reviewed. While it would have been reasonable for Plaintiff to respond to Defendants' December 29, 1999 letter sooner than June 8, 2000, it is not the lateness of Plaintiff's objection which is of concern to the court. Rather, the court believes that the issue needs to be resolved, to the extent it can be, so that Defendants' next steps may be fairly and appropriately planned. *See Wyatt by and Through Rawlins v. Hanan,* 871 F.Supp. 415, 422 (M.D.Ala.1994) (denying motion to disqualify, in part, because it would be an undue burden and unfair to require party to obtain new expert).

This is not to say that Plaintiff's argument to delay resolution of the disqualification issue does not have some resonance. It is certainly true, as Plaintiff contends, that it is "the trial judge" who must take steps to ensure that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). It is also true, as Plaintiff argues, that the rules of evidence require

that questions concerning the qualification of witnesses, the existence of privileges and the admissibility of evidence are to be determined by "the trial court." *See United States v. Wilson,* 798 F.2d 509, 512 (1st Cir. 1986) (citing FED.R.EVID. 104).

However, these matters—which Plaintiff asserts can only be addressed once expert discovery has been completed—do not bar the court from addressing now the particular issue raised by Defendants' motion, namely, the present potential for conflict, if any, of their expert's interest. If indeed there is a conflict mandating disqualification, it is best that be known sooner rather than later. In that way, Defendants can retain a substitute expert if necessary. *See Ares–Serono, Inc., v. Organon Int'l B.V.,* 153 F.R.D. 4, 6 (D.Mass. 1993) ("Th[e] court enjoys ample discretion in fashioning the terms of a protective order to accommodate the needs and interests of the parties."). Accordingly, the court rejects Plaintiff's ripeness challenge and turns to consider of the merits of the disqualification issue.

## B. *Disqualification*

The cases Plaintiff cites describe two situations in which the issue of expert disqualification typically appears: (1) where an expert is retained by one party to litigation and switches sides to consult for the opposing party, or (2) where one party employs an expert who is in some way affiliated with the other party. Both situations create potential conflicts of interest in which courts have become involved— although there is no First Circuit decision directly on point. As explained below, this court does not believe that the present matter calls for disqualification under either rubric.

## 1. *Side–Switching*

■ In seeking to disqualify Haley & Aldrich, Plaintiff first refers to "side-switching" cases, i.e., instances where an expert communicated with one of the parties to the litigation and was subsequently retained by the opposing party regarding the same matter. *See e.g., Koch Ref. Co. v. Jennifer L. Boudreaux M/V,* 85 F.3d 1178 (5th Cir.1996); *Cordy,* 156 F.R.D. at 579. In the court's view, Plaintiff's reliance on these cases is misplaced.

To address the side-switching situation, courts generally have developed and adhered to a two-part inquiry as first described in *Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271 (S.D.Ohio 1988), to determine if disqualification of the expert is needed: "First, was it objectively reasonable for the first party who claims to have retained the expert to believe that a confidential relationship existed? Second, did that party disclose any confidential information to the expert?" *Cordy,* 156 F.R.D. at 579. Although disqualification is usually deemed appropriate only if both inquiries are answered in the affirmative, a minority view holds that, "[e]ven if no disclosures occur," disqualification might be required "to protect the integrity of the judicial process." *City of Westminster v. MOA, Inc.,* 867 P.2d 137, 140 (Colo. App. 1993). At bottom, both the majority and minority views require that a confidential relationship exist between the expert and the objecting party.[2]

Plaintiff has not demonstrated that a confidential relationship existed between it and Haley & Aldrich with regard to the present litigation. For one thing, Haley & Aldrich's involvement with Plaintiff's contractor, Tighe & Bond, to provide struc-

---

**2.** Courts generally employ a different standard for disqualification of experts than for disqualification of attorneys. Unlike attorneys, "[e]xperts are not advocates in the litigation but sources of information and opinions." *English Feedlot,* 833 F.Supp. at 1501. *See also Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.,* 734 F.Supp. 334, 338

(N.D.Ill.1990). *But see Marvin Lumber & Cedar Co. v. Norton Co.,* 113 F.R.D. 588, 591 (D.Minn.1986) ("[T]here is no sound basis for application of any different rule on the sole rationale that an expert, rather than an attorney, is the subject of the [disqualification] motion.").

tural engineering services for the landfill project is wholly unrelated to its involvement with Defendants to provide environmental consulting services with respect to the property on Plainfield Street at issue here. During the landfill project, the bulk of Haley & Aldrich's contact was with Tighe & Bond and only one Haley & Aldrich employee had any contact with Plaintiff. Although that contact involved participation in meetings where Plaintiff's DPW employees were present, there was no discussion involving the present litigation. Concomitantly, no one on the Haley & Aldrich team of engineers working with Tighe & Bond has done any work in connection with the instant litigation. In short, there has been no exchange of confidential information and Plaintiff fails to offer any evidence to the contrary. *See Palmer v. Ozbek*, 144 F.R.D. 66, 67–68 (D.Md. 1992) (denying motion to disqualify because there was no exchange of confidential information even though defendant's expert had discussed the case with plaintiff's expert); *English Feedlot*, 833 F.Supp. at 1502–03 (defendant's veterinary consultant can be plaintiff's expert in product liability case involving vaccines examined by expert because there was no exchange of confidential information notwithstanding a contractual relationship between defendant and consultant); *Wyatt*, 871 F.Supp. at 419–20 (consultant's involvement with both parties in pre-trial settlement efforts did not preclude consultant from serving as an expert witness for plaintiff regarding the same matter at trial).

### 2. *Affiliation*

■ Plaintiff also refers to cases addressing the disqualification of expert witnesses who are affiliated with experts for the opposing party. While courts have applied the two-part inquiry to the this line of cases as well, they tend to ask the following overriding question: is there any evidence that any substantive information about the case has been exchanged between the affiliated experts? *See U.S. ex rel. Cherry Hill Convalescent, Inc. v.*

*Healthcare Rehab Systems, Inc.*, 994 F.Supp. 244, 249 (D.N.J.1997) ("disqualification is not warranted where no privilege or confidential information was passed"). From all indications, there are at least four reasons why the answer to that question is "no."

First, both Haley & Aldrich and Defendants have been particularly sensitive to the potential problem. After being approached by Defendants in November of 1999, Haley & Aldrich immediately explored the possible conflict with both Defendants' counsel and Tighe & Bond. In turn, Tighe & Bond contacted the Deputy Director of Plaintiff's DPW's and informed him of the situation. In addition, Defendants' counsel advised Plaintiff's counsel about the matter in December of 1999, and it was not until February of 2000 that Defendants contracted for Haley & Aldrich's services. (Again, Plaintiff did not voice its objection until the following June.) There is no indication that any confidential information passed during these inquiries.

Second, Haley & Aldrich's engineering involvement, through Tighe & Bond, with the landfill project is wholly unrelated to its consulting relationship with Defendants with respect to the Plainfield Street site at issue here. In this regard, Haley & Aldrich avows, without objection, that it maintains confidential all business and technical information obtained or generated in the performance of its services and there has been no leakage of information from one project to the other. Moreover, there is no evidence of any substantive communications between Haley & Aldrich employees working for Defendants and those working for Tighe & Bond regarding the landfill project. This is the very type of situation in which disqualification is inappropriate. *See Grant v. Lewis/Boyle, Inc.*, 408 Mass. 269, 557 N.E.2d 1136, 1138 (1990) (engineer not disqualified although he had been retained as expert years earlier by opposing side in another matter); *Great Lakes Dredge & Dock Co.*, 734 F.Supp. at 338 (no disqualification where opposing experts who worked for same research center did

not communicate about specific case); *E.E.O.C. v. Locals 14 and 15*, 1981 WL 163 (S.D.N.Y. Feb.11, 1981) (denying disqualification where opposing experts who co-owned a consulting firm demonstrated minimal risk of leaking of confidential information). *But see Wang Lab., Inc. v. CFR Associates, Inc.*, 125 F.R.D. 10, 12–13 (D.Mass.1989) (barring defendant from using as expert former employee of plaintiff who was subject to contractual trade secrets confidentiality clause).

Third, as Plaintiff itself points out, applicable engineering ethical standards prohibit Haley & Aldrich from engaging in transactions that would raise a conflict of interest.[3] These standards have not been shown by Plaintiff to have been violated here. On the contrary, it appears that Haley & Aldrich was well aware of its ethical duties when it was first approached by Defendants and determined, as was its obligation, that its professional judgment would not be compromised by providing expert services in the case at bar. Interestingly enough, Plaintiff has not addressed its concerns directly to either Tighe & Bond, its contractor, or Haley & Aldrich, its subcontractor, but to Defendants.

Fourth, the court does not believe that Haley & Aldrich's services to Defendants have violated the conditions under which Tighe & Bond and, in turn, Haley & Aldrich, as a subcontractor, were selected to provide engineering services to Plaintiff for the landfill project. Those of Plaintiff's plans and materials which were made

available for review by Tighe & Bond have not been shown to relate to the instant litigation in any respect. Whether anyone at Haley & Aldrich reviewed such landfill-related materials is similarly irrelevant to the present motion. Plaintiff's attempt to tar Defendants' counsel in this regard is likewise unconvincing.

Put simply, there is no indication that Defendants' hiring of Haley & Aldrich has given them access to any privileged information. Accordingly, any "affiliation" argument has no substance here.

### 3. *Other Arguments*

Plaintiff's remaining assertions are likewise unavailing. First, Plaintiff suggests that its ability to present its case could be prejudiced insofar as it may be hindered from having complete and candid discussions about the landfill project where some of the contaminated soil from the site at issue here was deposited. However, as Defendants argue, any soil so deposited over the last four decades has since been commingled with other soil and waste as to be irrelevant. Second, the fact that Tighe & Bond performed laboratory work for Plaintiff regarding Defendants' Roosevelt Avenue facility is of no moment. The Roosevelt Avenue facility is not the subject of this litigation and, in any case, Defendants have hired Haley & Aldrich, not Tighe & Bond, as its expert.

### III. *CONCLUSION*

For the reasons stated, the court believes that Defendants' retention of Haley

---

**3.** The canons of the Society of Professional Engineers requires engineers to "[a]ct in professional matters for each employer or client as faithful agents or trustees." National Society of Professional Engineers, CODE OF ETHICS FOR ENGINEERS (Pl.'s Affidavits and Exhibits in Opp'n to Defs.' Mot. to Overrule Objection to Haley & Aldrich (Docket No. 46), Ex. 1 § I(4)). Among other obligations, engineers are prohibited from disclosing "confidential information concerning the business affairs or technical processes of any present or former client or employer without his consent." (*Id.* § III(4).) In particular, engineers are forbidden "without the consent of all interested parties" from participating in or representing

"an advisory interest in connection with a specific project or proceeding in which the Engineer has gained particular specialized knowledge on behalf of a former client or employer." (*Id.* § III(4)(b).) *See also* MASS. REGS.CODE tit. 250, § 4.05 (2000) (registered engineers to act as faithful agents and avoid conflicts of interest); Steven Lubet, *Expert Witnesses: Ethics and Professionalism*, 12 GEO J. LEGAL ETHICS 465, 467 (1999) ("[e]xperts certainly must adhere to the standards of their own fields concerning matters such as confidentiality and conflicts of interest. They may even be subject to professional regulation or discipline for their conduct as witnesses.").

& Aldrich does not presently create a conflict of interest warranting disqualification. Accordingly, Defendants motion is hereby ALLOWED, but with two caveats. First, even though the court concludes that no conflict is evident from the evidence known at this time, there may well be facts which come to light or arise in the future which would demonstrate the need to disqualify Haley & Aldrich. Thus, the court's ruling is without prejudice to Plaintiff's filing a properly supported disqualification motion in the future. Second, as Defendants must per force concede, the court's ruling does not necessarily mean that Haley & Aldrich will be qualified as an expert by the trial court under the standards established by *Daubert* and its progeny. That issue, presumably, will be addressed by the trial court.

To the extent Plaintiff, in opposition to Defendants' motion, seeks work product information provided by Haley & Aldrich to Defendants' counsel, that request is DENIED.

IT IS SO ORDERED.