**In re MALDEN MILLS INDUSTRIES, INC., et al., Debtors.**

**Commerce Industry Insurance Company, et al.,**

v.

**E.I. du Pont de Nemours & Company, et al.**

Bankruptcy Nos. 01–47214–JBR to 01–47217–JBR. Adversary No. 01–4433.

United States Bankruptcy Court, D. Massachusetts.

April 18, 2002.

James T. Hargrove, Leonard H. Freiman, Alan M. Reisch, Goulston & Storrs, P.C., Boston, MA, for Commerce and Industry Insurance Company, et al.

Paul Michienzie, David B. Russman, John C. Barker, Michienzie & Sawin LLC, Boston, MA, for The Fenwal Defendants.

John A. Donovan, Jr., Kevin G. Kenneally, Andrew J. Botti, Donovan Hatem, Boston, MA, for Detector Electronics Corp.

## MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on the Defendants' Motion to Prevent Plaintiffs' Improper Attempt to Disqualify Defendants' Expert, Vahid Ebadat [# 97] ("Motion to Prevent Disqualification")[1] and various affidavits in support of the Motion,[2] filed on April 1, 2002. The Defendants sought and were granted an emergency hearing the same afternoon the Motion was filed. At that hearing the Court entered an order prohibiting Dr. Ebadat from attending a site visit which was to take place the following day. In addition the Plaintiffs were ordered to advise the Court no later than April 8, 2002 if they objected to Dr. Ebadat's retention by the Defendants. On April 8, 2002 the Plaintiffs filed their opposition [# 104] (the "Opposition") along with a motion to impound papers submitted in support of the Opposition [# 105] (the "Impoundment Motion"). The Defendants subsequently filed an opposition to the Impoundment Motion [# 106] (the "Impoundment Objection").

On April 17, 2002 the Court held a further hearing on the Motion to Prevent Disqualification at which neither side offered any further evidence. Based upon the pleadings filed in this case and arguments of counsel,[3] the Court hereby finds and orders as follows.

1. The Defendants include all the present defendants in this adversary proceeding, namely the so-called Fenwal defendants and Detector Electronics Corporation. The Plaintiffs herein are the debtor, Malden Mills Industries, Inc.; Commerce and Industry Insurance Company; and Federal Insurance Company.

2. The three affidavits are the Affidavit by Paul Michienzie In Support Of Defendants' Motion To Prevent Plaintiffs' Improper Attempt To Disqualify Defendants' Expert, Vahid Ebadat [# 99]; the Affidavit Of John C. Wyman In Support Of Motion To Prevent Plaintiffs' Improper Attempt To Disqualify Defendants' Expert, Vahid Ebadat by The Fenwal Defendants and Detector Electronics Corporation [# 100]; and Affidavit Of Vahid Ebadat In Support Of Motion To Prevent Plaintiffs' Improper Attempt To Disqualify Defendants' Expert, Vahid Ebadat by The Fenwall Defendants and Detector Electronics Corporation [# 101].

3. The Court reviewed the documents which are the subject of the Impoundment Motion *in camera*. By separate order the Court has denied the Impoundment Motion. Lest the Plaintiffs believe they are prejudiced by the denial, the Court notes that if it were to have admitted those documents under seal, there

## FACTS

On December 11, 1995 a catastrophic fire destroyed the Debtor's manufacturing facilities. On or about January 17, 1996, Dr. Robert Zalosh, of the Worcester Polytech Institute and one of the Plaintiffs' then consultants, now designated as a testifying expert by the Plaintiffs (Exhibit C to Joint Preliminary Scheduling Memorandum, dated March 1, 2002), contacted Chilworth Technology, Inc. ("Chilworth") located in Monmouth Junction, New Jersey. Dr. Vahid Ebadat is the vice president and an employee of Chilworth. Chilworth conducted the tests requested by Dr. Zalosh on the material provided to it and issued reports of those findings on April 22, 1996 and August 5, 1996. In his affidavit, Dr. Ebadat describes this testing as follows:

> In or around May of 1996, Chilworth performed certain blind testing for Professor Robert Zalosh of Worcester Polytech Institute ("Zalosh"). I am informed that this testing was standardized testing, and that Chilworth did no consulting work for Zalosh. I was not involved in this testing for Professor Zalosh, nor did I learn about the testing results.

Ebadat Affidavit at ¶ 6.

In April 1998 E.I. du Pont de Nemours and Company ("DuPont"), a former defendant in this case,[4] through its counsel Murtha, Cullina, Roche, Carens, & DeGiacomo ("Murtha"), retained Chilworth and Dr. Ebadat as consultants and litigation experts. On December 3, 1998 the Plaintiffs commenced their litigation against the Defendants in state court. On November 29, 2001 the Debtor filed a petition for reorga-

nization under Chapter 11 of the Bankruptcy Code. The Debtor subsequently removed the litigation to this Court.[5] Dr. Ebadat and Dr. Dehong Kong, also of Chilworth, attended several conferences in connection with this litigation at which DuPont and the other Defendants, the so-called Joint Defense Group, were present. Litigation strategies as well as scientific theories and opinions were discussed at these meetings. In addition Dr. Ebadat attended at least one, and possibly two, earlier site visits where the Plaintiffs' experts and consultants, and on at least one of those occasions, an attorney for the Plaintiffs were present. Dr. Ebadat signed in and gave his name and company affiliation as was required at these visits. After DuPont settled, the remaining defendants retained Dr. Ebadat and Chilworth as defense experts and identified Dr. Ebadat as a testifying expert. (Exhibit D to the Joint Preliminary Scheduling Memorandum). On or about March 19, 2002 one of the Plaintiffs' attorneys informed one of the Defendants' attorneys that the Plaintiffs had retained Chilworth as their expert shortly after the December 1995 fire. The Defendants believe that Chilworth and Dr. Ebadat are their experts and filed the Motion to Prevent Disqualification to bring this matter to the Court's attention.

## DISCUSSION

An expert can be disqualified under the court's general equitable powers if the party seeking the disqualification can meet one of three different tests, all of which are based on preventing confidential information transmitted from the party seeking disqualification to the opposing side via the

---

would be further support for the findings set forth herein.

**4.** DuPont settled with the Plaintiffs in approximately November 2001.

**5.** The Defendants objected to the removal and filed a Motion to Remand or Abstain which was denied by this Court. That matter is now on appeal.

expert. The three tests are usually applied in different factual contexts.

■ If disqualification is based on the expert switching sides, the two-part test articulated in *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271 (S.D.Ohio 1988), is followed by a majority of courts, including federal courts in Massachusetts. *See, e.g., The City of Springfield v. Rexnord Corporation*, 111 F.Supp.2d 71, 74 (D.Mass.2000) (per Neiman, U.S. Magistrate Judge). The parties also acknowledge that this test is the one that should be applied in the instant case. Under the *Paul* standard, the Court must determine:

1. Whether it is objectively reasonable for the party seeking disqualification to believe a confidential relationship existed between that party and the expert, and if so

2. Whether the party seeking disqualification disclosed confidential information to the expert.

■ In determining whether it is objectively reasonable to believe that a confidential relationship existed, the burden is on the party who claims to have first retained the expert to make sure the expert understands (a) the type of relationship that the engaging party expects will exist and (b) the need for confidentiality. *Paul*, 123 F.R.D. at 279. The burden is still on the party seeking to disqualify the expert even if that party is not technically the moving party. *City of Springfield*, 111 F.Supp.2d at 73. If the party seeking disqualification meets this burden, it still must show that confidential information was passed to the expert.

■ The confidential information that is passed must be "of either particular significance or [of a type] which can be readily identified as either attorney work product or within the scope of attorney-client privilege." *Paul*, 123 F.R.D. at 279. "[T]he discussion of mere technical infor-

mation about a case does not meet a party's burden under this framework.... Nor is disqualification appropriate if where the confidentiality of the information has been legally waived...or if the information claimed to be confidential is actually routinely discoverable." *Mitchell v. Wilmore*, 981 P.2d 172, 176 (Colo.1999) (citations omitted). "[I]t is the nature of the communications between an attorney and an expert, and the extent to which both parties appreciate the significance or confidentiality of those communications, which is the crucial focus of the court's inquiry into whether an expert should later be disqualified from serving on behalf of the other party." *Paul*, 123 F.R.D. at 279–80.

■ If an expert witness is affiliated with an expert for the other side, the test for disqualification still revolves around the transfer of confidential information. Specifically courts examine whether there is "evidence that any substantive information about the case has been exchanged between the affiliated experts." *City of Springfield*, 111 F.Supp.2d at 74. *See also Great Lakes Dredge & Dock Co. v. Harnischfeger*, 734 F.Supp. 334, 338 (N.D.Ill. 1990) (no disqualification of opposing experts employed by the same firm in absence of any evidence of transfer of information about the specific case); *but see Wang Lab., Inc. v. CFR Associates, Inc.*, 125 F.R.D. 10 (D.Mass.1989) (former employee was disqualified because he was still subject to a trade secrets confidentiality agreement with former employer).

Some courts have framed the test for disqualifying experts as whether disqualification is necessary to preserve the integrity of the judicial system. *City of Westminster v. MOA, Inc.*, 867 P.2d 137, 140 (Colo.App.1993) (adopting the two-prong approach but stating that even if no disclosure occurs, disqualification may be necessary to protect the integrity of the judicial

system). This approach has been criticized when it is the sole basis for disqualification of an expert as experts and attorneys play different roles in litigation and owe different levels of duty to a client. *Mitchell*, 981 P.2d at 175. It is so nebulous, when applied to an expert witness' role, that a moving party might gain an unfair tactical advantage if courts are quick to disqualify experts without requiring a showing of a particular need to do so. Some courts use this test as another reason for disqualification when coupled with one of the tests set forth above.

## DISQUALIFICATION OF DR. EBADAT

■ The Opposition, unsupported by any affidavits, is full of conclusory remarks but there is nothing in the Opposition to support disqualification under any of the above tests. The thrust of the Plaintiffs' argument is that Dr. Ebadat and/or Chilworth is or was their expert and cannot now switch sides.

There is no evidence to support a reasonable belief that a confidential relationship existed between the Plaintiffs and Dr. Ebadat or Chilworth. Chilworth was hired by Dr. Zalosh. There is nothing in the communication to suggest that Dr. Zalosh told Dr. Ebadat or anyone else at Chilworth that any Chilworth employee would be working for Malden Mills or any other Plaintiff. The quotation for services to be rendered was sent to Dr. Zalosh; the invoice was sent to him. Nothing in the communications refers to any of the Plaintiffs or even the "deflagration." The Defendants have offered evidence by way of affidavit testimony that Dr. Ebadat did not believe that he or Chilworth had been retained as experts. The testing was "blind" and standardized. Nothing presented to the court identifies Chilworth's client as anyone other than Dr. Zalosh.

The Plaintiffs quote from part of the Chilworth "Standard Terms and Conditions of Business" Statement (the "Statement") in their Opposition and argue that it supports their contention that Dr. Ebadat acknowledged that the information was confidential. The paragraph actually purports to bar *third parties* from relying on the testing as the test result is "privileged and confidential and is intended only for the use of the Customer." In this case the "Customer" was Dr. Zalosh.

The Plaintiffs ask the Court to infer the existence of a confidential relationship between Dr. Ebadat and themselves but they took no steps to ensure Dr. Ebadat and Chilworth understood the existence of any relationship with the Plaintiffs. Neither the Plaintiffs not their lawyers hired Dr. Ebadat; another consultant did. Dr. Ebadat was not asked to sign a confidentiality agreement. There is no writing from the Plaintiffs, their lawyers or their consultant regarding confidentiality. The only mention of confidentiality is in Chilworth's Statement which, by its very language, excludes third parties, such as the Plaintiffs, from the scope of who can rely on the testing. If the Plaintiffs or their lawyers wanted to be the "Customer," they could have and should have identified themselves as such to Chilworth and Dr. Ebadat.

Having failed to satisfy the first prong of the test, the Court does not need to address the second prong. It should be noted, however, that again the Plaintiffs have offered no evidence that confidential information was disclosed. In fact, the Plaintiffs have not demonstrated that any confidential information they disclosed to Chilworth or that they received from Chilworth was ever communicated to Dr. Ebadat. In fact, they offer nothing to rebut the affidavit testimony that Dr. Ebadat was not involved in or aware of the results the testing, and that Chilworth was in-

structed to and did "wall off" the DuPont testing from the earlier Zalosh testing.

To the extent that the Court considers factors beyond the two prongs set forth above, the balance still weighs in favor of the Defendants' retention of Dr. Ebadat. The Plaintiffs never listed or disclosed Dr. Ebadat as an expert, even if only as an expert not expected to testify at trial.

Finally the Plaintiffs, relying upon *City of Westminster*, urge the Court to disqualify Dr. Ebadat as the latter of two Chilworth experts hired. The Plaintiffs, however, fail to identify any other Chilworth employee whom they believe they retained as an expert. They state only that they retained Chilworth and Dr. Ebadat. Moreover the Plaintiffs' argument that it will not be able to impeach Dr. Ebadat at trial because their expert, Dr. Zalosh, may have relied upon Chilworth's testing does not justify granting the Plaintiffs the relief they seek when they have failed so completely to meet their burden under the *Paul* test. Allowing the disqualification of Dr. Ebadat this close to the end of discovery without the Plaintiffs making the required showing for disqualification harms the Defendants' preparation of this case. No evidence was presented to justify such a result.

### CONCLUSION

For the foregoing reasons, the Motion to Prevent Disqualification is allowed.